**Gilmer L. BATTON, Joe Schwarz and Bill Cunningham, Appellants,**

v.

**Howard W. GREEN, Steve L. Taylor and W. Jay Taylor, Appellees.**

No. 05–90–00807–CV.

Court of Appeals of Texas, Dallas.

Dec. 14, 1990.

Rehearing Denied Jan. 21, 1991.

Charles A. Gall and Matthew K. Davis, Jenkins & Gilchrist, Dallas, for appellants.

Samuel L. Boyd, Boyd & Associates, Dallas, for appellees.

Before WHITHAM, LAGARDE and WHITTINGTON, JJ.

## OPINION

WHITHAM, Justice.

In this appeal from an admitted interlocutory order, the defendants-appellants, Gil-

mer L. Batton, Joe Schwarz, and Bill Cunningham, (the Batton parties) appeal from the trial court's order denying their first amended plea in abatement and motion to stay action pending arbitration in a suit brought against the Batton parties by the plaintiffs-appellees, Howard W. Green, Steve L. Taylor, and W. Jay Taylor (the Green parties). We address the threshold issue of whether this interlocutory order is appealable. We conclude that the order is not appealable. Accordingly, we dismiss this appeal for want of jurisdiction.

### Introduction

The Batton parties desire to force the Green parties to arbitration. Rather than ask the Texas trial court to compel arbitration, the Batton parties sought to avoid further proceedings in the Texas trial court. The Batton parties did so as a part of their defense tactics. The Batton parties' efforts to avoid proceeding in the Texas trial court failed. This is obvious from the trial court's order now before us. Had the Batton parties sought from the trial court an order to compel arbitration, we would have jurisdiction of an appeal from the interlocutory order denying an application to compel arbitration. The Batton parties, however, in order to escape the consequences of their failed defense tactics, now demand that we abandon application of Texas law governing appeals from interlocutory orders and afford them a right to an interlocutory appeal the Batton parties claim to find in federal statute. We decline to do so.

### Factual Background

The Batton parties are current or former employees of NCR Corporation. The Green parties are shareholders and officers of Taylor Management Systems, Inc. The Green parties brought this action in their individual capacities against the Batton parties in their individual capacities. Nevertheless, an arbitration clause in an agreement between NCR and TMS creates the issue in this appeal. On or about July 16, 1986, NCR and TMS entered into a software license agreement. Pursuant to the terms of the agreement, NCR was permitted to market TMS' computer software to NCR's computer hardware customers, paying TMS a royalty on each sale. The agreement contains a clause requiring arbitration of all disputes "arising out of or related to" the agreement. Specifically, Section 21 of the agreement provides:

21.0 DISPUTES AND GOVERNING LAW.

21.1 Any controversy or claim between the parties hereto, regardless of the nature of the theory or cause of action under which it is asserted, including any claim of misrepresentation, arising out of or related to this Agreement or the breach thereof, or the furnishing of any equipment or services by either party, shall be settled by arbitration.

21.2 The arbitration proceedings shall be conducted by a single arbitrator under the auspices of the then-current Commercial Rules of the American Arbitration Association. The arbitrator shall be chosen from a panel of persons knowledgeable in business information and data processing systems. The power and office of the arbitrator shall arise wholly and solely from this Agreement and said Rules. The arbitration shall be conducted in Dayton, Ohio, and the award of the arbitrator so rendered shall be final and binding, except to the extent that any arbitration award may be modified or vacated pursuant to the Ohio Arbitration Act. The award so rendered may be confirmed, modified or vacated only in the court of appropriate jurisdiction in Dayton, Ohio.

On January 11, 1989, NCR and TMS entered into an amendment to the agreement. Pursuant to the terms of the amendment, NCR paid "advance royalties" to TMS, as loans to TMS, to assist TMS with financial difficulties encountered in meeting its obligations to NCR under the agreement. Pursuant to the terms of the agreement, TMS released all claims it had against NCR

in connection with the parties' dealings to date. Specifically, the release provides in relevant part that:

3.0 RELEASE

3.1 Based upon the foregoing, each party for itself, its successors in interest and assigns, releases and discharges the other party, its successors and assigns, of and from all past, present and future claims, demands, actions and causes of actions of any kind or nature, either directly between the parties or from a third-party or parties, whether known or unknown, based upon the performance or nonperformance of such other party of its obligations, if any, to (i) provide any level of selling or marketing efforts or (ii) provide the other party directly with technical, educational, or developmental support, prior to the Effective Date hereof, in relation to the business transaction described herein before, or based on the economic consequences thereof. Such release shall not operate as to claims, actions and causes of action of any kind or nature relating to (i) performance of the products of the respective parties or (ii) performance of the parties in development, delivery, installation, or technical and educational support of users of such products, and in the event that any claim therefor is made against either party by any third-party user of the parties' products, either party may seek such remedies as may be provided therefor by (i) the Agreement, (ii) the Amendment, or, (iii) to the extent permitted by the Agreement and the Amendment, by law.

Thereafter, the Green parties filed this action. The Batton parties insist that the Green parties brought the suit to circumvent TMS' contractual obligations to submit all claims against NCR to arbitration, to avoid the effects of the arbitration clause, and to avoid repayment of the loans and the effect of the release. Following the filing of this action, NCR instituted suit in the United States District Court for the Southern District of Ohio, Western Division, *NCR Corporation v. Taylor Management Systems, Inc., Howard W. Green, Steve L. Taylor and W. Jay Taylor,* Cause No. C–3–90–185, seeking an order compelling the Green parties to submit the claims in this case to arbitration as provided by the agreement. Subsequently, the Batton parties filed their first amended plea in abatement and motion to stay action pending arbitration in the present case which asked the trial court to abate this action pending a decision in the Ohio action. A hearing was held in the trial court. The trial court denied the plea in abatement and motion to stay action pending arbitration. The Batton parties seek to appeal from that order of denial. The Batton parties ground their right to appeal on provisions of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* the Texas General Arbitration Act, Tex.Rev.Civ.Stat.Ann. art. 224 *et seq.,* and Section 51.014 of the Texas Civil Practice and Remedies Code. Because the nature of the relief denied by the trial court becomes important to disposition of this appeal, we repeat that the trial court denied:

(1) a plea in abatement, and

(2) a motion to stay action pending arbitration.

We point out that the trial court did not:

(1) deny an application to compel arbitration, or

(2) grant an application to stay arbitration.

*See* Tex.Rev.Civ.Stat.Ann. art. 238–2(A)(1) & (2) (Vernon 1973). Given our disposition of this appeal we ask the reader to keep in mind what the trial court did and did not do in ruling upon the matter before it. Moreover, be it known that the Batton parties have never asked the trial court to compel the arbitration.

■ Although the parties raise the jurisdiction question, a court must notice, even sua sponte, the matter of its own jurisdiction, for jurisdiction is fundamental in nature and may not be ignored. *Marshall v. Brown,* 635 S.W.2d 578, 580 (Tex.App.— Amarillo 1982, writ ref'd n.r.e.). If the present case is an appeal over which we

have no jurisdiction, then the appeal must be dismissed. *See Marshall,* 635 S.W.2d at 580–81. To be appealable, an order must be a final judgment; an interlocutory order is not appealable unless specifically made so by statute. *Henderson v. Shell Oil Co.,* 143 Tex. 142, 143–44, 182 S.W.2d 994, 995 (1944). A final judgment is one that determines the rights of the parties and disposes of all the issues involved so that no future action by the trial court will be necessary in order to settle and determine the entire controversy. *Wagner v. Warnasch,* 156 Tex. 334, 338, 295 S.W.2d 890, 892 (1956). An interlocutory order leaves something further to be determined and adjudicated in disposing of the parties and their rights. *Kinney v. Tri–State Telephone Co.,* 222 S.W. 227, 230 (Tex.Comm'n App.1920, judgm't approved). In this connection, we emphasize that the Batton parties conceded at oral argument that the trial court's order at issue is interlocutory. Thus, we reach the question of whether the order is made appealable by statute.

### State Statute

First, we look to whether the order is one that (1) appoints a receiver or trustee; (2) overrules a motion to vacate an order that appoints a receiver or trustee; (3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure; (4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65; or (5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.1990). We conclude that the order is not within the interlocutory orders made appealable by Section 51.-014 of the Civil Practices and Remedies Code. Therefore, we consider the one remaining Texas statute bearing on the question. Hence, we must determine whether the order is one that denies an application to compel arbitration or grants an application to stay arbitration. *See* TEX.REV.CIV. STAT.ANN. art. 238–2 (Vernon 1973). That statute provides:

Sec. A. An appeal may be taken from:

(1) An order denying an application to compel arbitration made under Section A of Article 225;

(2) An order granting an application to stay arbitration made under Section B of Article 225;

(3) An order confirming or denying confirmation of an award;

(4) An order modifying or correcting an award;

(5) An order vacating an award without directing a rehearing; or

(6) A judgment or decree entered pursuant to the provisions of this Act.

Sec. B. The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

The Batton parties insist that the trial court's order denying their plea in abatement and motion to stay action pending arbitration is an order denying an application to compel arbitration within the meaning of article 238–2, section A(1) or an order granting an application to stay arbitration within the meaning of article 238–2, section A(2). In this connection, we emphasize that we have before us an order which *denies* a plea in abatement and *denies* (not *grants*) a motion to stay the action pending arbitration. We also point out that denial of a plea in abatement is not made appealable by article 238–2. We further note that denial of a *motion to stay the action pending arbitration* is not made appealable by article 238–2. (It is an order granting an *application to stay arbitration* which is made appealable by article 238–2 section A(2).) Nevertheless, at oral argument, the Batton parties ask that we utilize, in counsel's words, a fiction, to find an appealable order. Thus, while admitting that article 238–2 does not cover the order at issue, the Batton parties would

have us treat the present case as an appeal from an order granting a temporary injunction under Section 51.014 of the Texas Civil Practice and Remedies Code. We decline to engage in "fiction" to allow an appeal of an interlocutory order. Therefore, to the extent that the case of *Robert V. Buck & Associates Architects v. MHTA Partnership*, 783 S.W.2d 822, 822–23 (Tex.App.— San Antonio 1990, no writ) suggests that we may engage in such a fiction, we elect not to follow the decision in that case.[1] It follows that the order in question is not made appealable by Texas statute. Ordinarily, we would now dismiss this appeal for want of jurisdiction. The Batton parties, however, advance the argument that we have jurisdiction of an appeal from this interlocutory order by virtue of a federal statute. Consequently, we reach the intriguing question of whether the Congress of the United States can grant to this state appellate court jurisdiction over appeals which the Texas Legislature has not. Thus, we turn to consider the interpretation that the Batton parties would have us place upon the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

### Federal Statute

As to substantive rights under the Federal Arbitration Act, this court recognizes that the Act is substantive and is the law of Texas. The Act is the law of New York and also the law of Texas with respect to any "contract evidencing a transaction involving commerce," as defined in that Act. *Mamlin v. Susan Thomas, Inc.*, 490 S.W.2d 634, 637 (Tex.Civ.App.—Dallas 1973, no writ). The federal act has been held to be substantive rather than procedural, and equally applicable in state and federal courts, even though the contract provides that any dispute should be settled by arbitration under the laws of a particular state. *Mamlin*, 490 S.W.2d at 637.

The Act contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989). Nevertheless, the Batton parties contend that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* establishes substantive federal law which applies in the present case and which "preempts any state law which would prohibit this appeal." We now address this "pre-empt" argument. Even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Volt Information*, 109 S.Ct. at 1255 (citing *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). For the reasons that follow, we conclude that "any state law which would prohibit this appeal" does not conflict with federal law to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Section 2 of the Act is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. *Cone*, 460 U.S. at 24, 103 S.Ct. at 941. For the purposes of this opinion, we assume, but do not decide, that the arbitration agreement between NCR and TMS applies to the dispute between the

---

1. Federal court treatment of orders denying arbitration as injunctions in order to allow interlocutory appeal ended in 1988. *See Gulfstream Aerospace Corp. v. Mayacamus Corp.*, 485 U.S. 271, 278–87, 108 S.Ct. 1133, 1138–42, 99 L.Ed.2d 296 (1988) (holding that the fiction of denominating a stay of an action at law on equitable grounds as an injunction for the purposes of allowing an interlocutory appeal is no longer valid).

Green parties and the Batton parties before the trial court in the present case. Furthermore, we assume, but do not decide, that the arbitration agreement before the trial court in the present case is within the coverage of the Act. State courts, as much as federal courts, are obliged to grant stays of litigation under Section 3 of the Arbitration Act. *Cone*, 460 U.S. at 26, 103 S.Ct. at 942. (This is in spite of the fact that Section 3 refers to actions "in any of the courts of the United States." *Cone*, 460 U.S. at 26, n. 34, 103 S.Ct. at 942, n. 34.) It is less clear, however, whether the same is true of an order to compel arbitration under Section 4 of the Act. *Cone*, 460 U.S. at 26, 103 S.Ct. at 942. (Section 4, unlike Section 3, speaks only of a petition to "any United States district court." *Cone*, 460 U.S. at 26, n. 35, 103 S.Ct. at 942, n. 35.)

Before continuing, however, we deem it appropriate to make certain observations bearing on the appellate process. First, we read *Cone*'s comment "notwithstanding any state substantive or procedural policies to the contrary" to refer to state policies perceived as "anti-arbitration." We do not perceive Texas law applicable to appeals from interlocutory orders to be "anti-arbitration." Indeed, the United States Supreme Court provides us with examples of "anti-arbitration" state policies which the Act pre-empts. The Act was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate. *Volt Information*, 109 S.Ct. at 1255. In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, the United States Supreme Court has held that the Act pre-empts state laws which require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. *Volt Information*, 109 S.Ct. at 1255. A state statute which rendered agreements to arbitrate certain franchise claims unenforcea-

ble stands pre-empted. *See Volt Information*, 109 S.Ct. at 1255. A state statute which rendered unenforceable private agreements to arbitrate certain wage collection claims stands pre-empted. *See Volt Information*, 109 S.Ct. at 1255. Second, we fail to see how the Act's creation "of a body of federal substantive law of arbitrability" can change Texas procedural requirements governing appeals from interlocutory orders. Indeed, there is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. *Volt Information*, 109 S.Ct. at 1254. Although the Act's "substantive" provisions (Sections 1 and 2) are applicable in state as well as federal court, the United States Supreme Court has never held that Sections 3 and 4 of the Act, which by their terms appear to apply only to proceedings in federal court are nonetheless applicable in state court. *See Volt Information*, 109 S.Ct. at 1254 n. 6 (expressly reserving the question whether Sections 3 and 4 of the Act apply to proceedings in state courts (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 10, 104 S.Ct. 852, 861 n. 10, 79 L.Ed.2d 1 (1984))).[2] As put by the Supreme Judicial Court of Maine, although the issue of arbitrability involves substantive federal law, the question of appealability depends on this Court's [Maine's highest court] interpretation of state procedural requirements. *Xaphes v. Mowry*, 478 A.2d 299, 301 (Me. 1984) (citing *Southland Corp.*, 465 U.S. at 16 n. 10, 104 S.Ct. at 861 n. 10). We agree. We conclude that in the present case the question of appealability depends on the interpretation made by Texas courts of the appellate procedural requirements of the State of Texas. Third, this court recognizes application of the Act's substantive rights in Texas. *See Mamlin*, 490 S.W.2d at 637. Thus, it cannot be said that Texas state policies exhibit an anti-arbitration attitude.

**2.** We leave to legal scholars the question of whether too broad a reading of *Cone* is now

discouraged by the Supreme Court.

With this background, we reach the linchpin of the Batton parties' argument. The Batton parties point to Section 15 of the Act and assert that the federal substantive law of arbitrability commands this state appellate court to hear this appeal from an interlocutory order regardless of state law.[3] The Batton parties find support for this command in Section 15 of the Act:

(a) An appeal may be taken from—

(1) an order—

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C.A. § 15 (Appeals) (West Supp. 1990). Thus, the Batton parties read the words "refusing a stay of any action under section 3 of this title" to afford them the substantive right to an appealable order. Understandably, the Batton parties fail to construct for us an argument as to why Section 15 affords them an interlocutory appeal other than to point to *Cone*'s language "notwithstanding any state substantive or *procedural* policies to the contrary." 460 U.S. at 24, 103 S.Ct. at 941 (emphasis added). As pointed out above, we read *Cone* to speak only to specific state procedural policies designed to thwart the recognized "liberal federal policy favoring arbitration agreements." 460 U.S. at 24, 103 S.Ct. at 941. In the present case, the Batton parties do not, and cannot, contend that Texas law applicable to appeals from interlocutory orders was designed or operates to interfere with "liberal federal policy favoring arbitration agreements." To the contrary, Texas law applicable to appeals from interlocutory orders specifically allows a litigant insisting upon arbitration an interlocutory appeal from (1) an order denying an application to compel arbitration and (2) an order granting an application to stay arbitration. *See* Tex.Rev.Civ. Stat.Ann. art. 238–2 (Vernon 1973). In the present case, the Batton parties did not seek an order to compel arbitration. In the present case, the Batton parties did not suffer an order staying arbitration. Hence, we conclude that the Batton parties cannot be heard to complain that Texas law applicable to appeals from interlocutory orders is designed or operates to interfere with arbitration. Instead, we can only conclude that the Batton parties, having failed to ask the trial court to compel arbitration, now seek to have, by convoluted means, the very access to this court by appeal from an interlocutory order which they could have had if they had sought to compel arbitration and been denied that relief.

We turn, therefore, to consider whether the Act, in the Batton parties'

---

**3.** We note the opinion of the Alabama Supreme Court in *A.G. Edwards & Sons, Inc. v. Clark,* 558 So.2d 358 (Ala.1990). To the extent that the opinion can be read to hold that section 15 of the Act gives the right to appeal an order of an Alabama state trial court denying arbitration, we decline to follow *A.G. Edwards. See A.G. Edwards,* 558 So.2d at 360.

words, "preempts any state law which would prohibit this appeal." We conclude that the Act does not. We reach this conclusion because the substantive rights bestowed upon a litigant by the Act do not control the "procedure" by which those substantive rights are adjudicated as the action proceeds from filing in the trial court to final disposition at the level of our Texas Supreme Court. Indeed, it boggles the mind to contemplate the consequences of holding that substantive rights created by the Congress of the United States become, in turn, a substantive right to obtain rewriting of procedural rules and statutes pertaining to the manner in which a litigant proceeds through the Texas state courts. We do not read the United States Supreme Court to have gone that far. We repeat: the United States Supreme Court has never held that Sections 3 and 4 of the Act, which by their terms appear to apply only to proceedings in federal court are nonetheless applicable in state court. *See Volt Information*, 109 S.Ct. at 1254 n. 6. Let there be no mistake. This court shall fully recognize and adjudicate to the best of our judicial ability federal substantive rights created by an act of the Congress of the United States. We reserve, however, the right to determine the point at which an appeal from asserted Texas trial court error is properly before us, including those instances in which a trial court's asserted error bears upon a federal substantive right. Although the issue of arbitrability involves substantive federal law, the question of appealability of a Texas trial court's interlocutory order said to invoke arbitration depends on the interpretation of state procedural requirements made by Texas courts. *See Xaphes*, 478 A.2d at 301. It follows, and we so hold, that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* does not pre-empt any law of the State of Texas which prohibits appeal of the trial court's interlocutory order. Moreover, we conclude that Section 15 of the Federal Arbitration Act does not create, or determine what is, an appealable interlocutory order to the courts of appeals of the State of

Texas. It follows, therefore, and we so hold, that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, does not make the trial court's interlocutory order appealable by federal statute or otherwise.

For the above reasons we conclude that the trial court's interlocutory order is not appealable. Consequently, we dismiss this appeal for want of jurisdiction.

WHITTINGTON, J., dissents with opinion.

WHITTINGTON, Justice, dissenting.

I respectfully dissent.

On July 16, 1986, NCR and Taylor Management Systems (TMS) entered into a software license agreement (the Agreement) which contained an arbitration clause. After the Green parties had filed this suit in the state courts of Texas, NCR brought suit in the United States District Court for the Southern District of Ohio, Western Division, seeking an order compelling the Green parties to submit the claims in this case to arbitration in accordance with the license agreement. The Batton parties (Batton) then filed in this case their first amended plea in abatement and motion to stay action pending arbitration.

In the amended pleadings in our case, Batton prays "the Court stay further proceedings in this case *pending completion of arbitration* as provided in the Agreement." (Emphasis added.) Batton asked the court to stay proceedings because "[o]n May 16, 1990, NCR instituted suit in the United States District Court for the Southern District of Ohio, Western Division, ... *seeking an order compelling* the Defendants to submit the claims in this case to arbitration as provided by the Agreement." (Emphasis added.)

Examining the pleadings and recognizing that the motion was filed to protect arbitration proceedings involving the same parties, I dissent from the majority's opinion. The majority chooses not to recognize the motion in our case as one to protect arbitra-

tion proceedings in progress because Batton has not met the formal requirements of the Texas General Arbitration Act (TAA) and of the Texas Civil Practice and Remedies Code.

*Robert V. Buck & Associates Architects, Inc., v. MHTA Partnership,* 783 S.W.2d 822 (Tex.App.—San Antonio 1990, no writ), holds that an order staying arbitration proceedings is appealable under the TAA "or *as an appeal from an order granting a temporary injunction*" under section 51.-014 of the Texas Civil Practices and Remedies Code. *Buck,* 783 S.W.2d at 822–23 (emphasis added). Ignoring the pending case in Ohio, which involves the same parties and issues and depends upon the license agreement obligating the parties to arbitrate, operates to foster a duplicity of actions.

The Agreement, a written contract, is the sine qua non of the Texas plaintiffs' cause of action. Without the Agreement, the Green parties have no cause of action. The corporate parties agreed to a valid choice of law provision in their contract and determined that they would arbitrate in Dayton, Ohio, and that Ohio substantive law would apply. The Green parties now seek individually to recover damages from the NCR corporate officers, claiming that their (the Green parties') rights under the license agreement have been damaged through fraudulent actions of the NCR corporate officers. The Green parties should not be able to sue Batton in the Texas court to circumvent the agreement they had previously made. By allowing the Green parties to litigate, this Court is allowing them to rely on the Agreement as the basis for a cause of action while disregarding the Agreement's terms and its arbitration clause.

## THE FEDERAL ARBITRATION ACT

One issue to be resolved is whether the Federal Arbitration Act (FAA) pre-empts Texas law. 9 U.S.C.A. § 1 *et seq.* (West 1970 & Supp.1990). I conclude that allow-

ing the Green parties to continue to litigate because Batton did not meet the formal requirements of the TAA and section 51.-014 of the Texas Civil Practices and Remedies Code is in conflict with the FAA. Batton's argument that the FAA applies is a compelling one in light of state and federal decisions. In refusing Batton's appeal on jurisdictional grounds, this Court is denying Batton a federal right guaranteed him under the FAA. Section 15 of Title 9 provides for appeals from an order *"refusing a stay of any action under section 3 of this title."* 9 U.S.C.A. § 15 (West Supp. 1990) (emphasis added). Denying Batton's right to appeal and thus forcing him to litigate his claim in the state courts rather than proceeding to arbitration defeats the purpose of the FAA. Strict local rules of pleading should not be used to impose unnecessary burdens upon rights of recovery authorized by federal law. *Brown v. Western Ry.,* 338 U.S. 294, 298, 70 S.Ct. 105, 107–08, 94 L.Ed. 100 (1949). The assertion of federal rights, when plainly and reasonably made, is not to be defeated in the name of local practice. *Brown,* 338 U.S. at 299, 70 S.Ct. at 108 (citing *Davis v. Wechsler,* 263 U.S. 22, 24, 44 S.Ct. 13, 14, 68 L.Ed. 143 (1923)).

Section 2 of the FAA favors "arbitration agreements, *notwithstanding any state substantive or procedural policies to the contrary."* *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) (emphasis added). Section 3 of the FAA requires a court to stay proceedings where the issue is referable to arbitration upon application of one of the parties until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C.A. § 3 (West 1970). The United States Supreme Court has not expressly held that section 3 is applicable in state court. *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 109 S.Ct. 1248, 1254 n. 6, 103 L.Ed.2d 488 (1989). However, state courts have almost unanimously recognized that the stay provision applies to suits in *state* as well as federal courts. *Cone,* 460 U.S. at 26 n. 34, 103 S.Ct. at 942

n. 34. Accordingly, I would hold that the court below should have stayed proceedings until the matter had been arbitrated.

The federal policy does not favor arbitration under a certain set of procedural rules but simply ensures the enforceability of private agreements to arbitrate. *Volt,* 109 S.Ct. at 1250. Although the FAA contains no express pre-emptive provision and does not reflect a congressional intent to occupy the entire field of arbitration, state law may be pre-empted if it actually conflicts with the federal law and is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Volt,* 109 S.Ct. at 1254–55; *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 *passim* (1956).

In *Volt,* the court held that California procedural laws would apply even though they would stay arbitration whereas the FAA would allow it to go forward. *Volt,* 109 S.Ct. at 1255. Applying the Texas procedural law to Batton's case, however, is not analogous to the situation in the *Volt* case. In *Volt,* the parties *"agreed to arbitrate in accordance with California law"* and the court looked at the "enforceability, according to their terms, of private agreements to arbitrate." *Volt,* 109 S.Ct. at 1254 (emphasis added). Batton, however, agreed to arbitrate in accordance with the law of Ohio, not Texas, and to arbitrate in Dayton, Ohio. The Texas procedural laws *do conflict* with the federal law and its policy of favoring arbitration agreements.

The federal law should be looked to regarding this Court's jurisdiction over Batton's appeal. Section 15 of the FAA allows an appeal from an order "refusing a stay of any action under section 3 of this title." 9 U.S.C.A. § 15 (West Supp.1990). Accordingly, this Court should entertain Batton's appeal from the state court's order denying his stay pending arbitration. To do so causes parallel litigation to proceed in the state and federal courts unnecessarily. I respectfully dissent from the majority's opinion.