JACK B. ANGLIN CO., INC.

v.

The Honorable Arthur TIPPS, Judge.

No. D–1750.

Supreme Court of Texas.

Nov. 18, 1992.

Kevin H. Good, M. Kelly Allbritton, Mark M. Donheiser, Dallas, for petitioner.

Mike Willatt, Austin, David Lee Spiller, Jacksboro, Don Holcomb, Austin, John Pierce Griffin, Dallas, for respondent.

## OPINION

CORNYN, Justice.

In this mandamus proceeding we decide three issues: 1) whether claims arising out of a construction contract dispute are arbitrable under the Federal Arbitration Act, 9 U.S.C. § 1—16 (the Federal Act), or the Texas General Arbitration Act, TEX.REV. CIV.STAT.ANN. art. 224—238-6 (the Texas Act); 2) whether claims brought under the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM.CODE § 17.41—17.63 (DTPA), are subject to the Federal Act; and 3) the nature of the hearing a trial court must conduct on an application for arbitration. Because we hold that the Relator has established the applicability of the Federal Act and that the Plaintiff's DTPA claims are subject to arbitration, we conditionally grant the relief requested.

In July 1988, the Jack B. Anglin Company, a Michigan corporation, agreed to build an earthen dam for the City of Jacksboro. The contract contains the following arbitration clause:

> All questions subject to arbitration under the Contract may be submitted to arbitration at the choice of either party to the dispute.

Following a mud slide on the downstream side of the dam, the City discovered that excessive moisture had weakened the dam. After remedial work was performed, a dispute arose between the parties over the expenses incurred for such work. The City claimed damages for extra engineering work and loss of water; Anglin claimed damages for extra work and the balance of the contract price. The City then filed this suit for breach of contract and negligence against Anglin, its bonding company, and two engineering firms. The City later amended its petition to add a cause of action against Anglin under the DTPA.

Anglin filed an application to compel arbitration and stay court proceedings, asserting that all of the City's claims were subject to arbitration pursuant to the parties' contract and must be arbitrated under the Federal Act or alternatively the Texas Act. Seeking to establish the project's impact on interstate commerce and thus the applicability of the Federal Act, Anglin tendered the affidavit of its president, Jack

Anglin.[1] In response, the City denied that its DTPA claims were subject to arbitration, claimed that no material issues were subject to the arbitration provision, and argued that arbitration would result in multiple suits because other defendants were not parties to the contract between Anglin and the City could not be compelled to arbitrate.

At the hearing on Anglin's application to compel arbitration, the trial court admitted Jack Anglin's affidavit over the City's hearsay objections. The City did not offer any evidence. The court granted the application in part and denied it in part, ordering arbitration "only with respect to the City's cause of action for breach of contract," thus denying arbitration of the City's DTPA claim. Anglin first sought a writ of mandamus in the court of appeals, which overruled Anglin's motion for leave to file its petition. Anglin then filed its motion in this court, which we granted.

## I.

Arbitration has been defined as:

a contractual proceeding by which the parties to a controversy or dispute, in order to obtain a speedy and inexpensive final disposition of matters involved voluntarily select arbitrators or judges of their own choice, and by consent submit the controversy to such tribunal for determination in substitution for the tribunals provided by the ordinary processes of the law.

*Alderman v. Alderman,* 296 S.W.2d 312, 315 (Tex.Civ.App.—San Antonio 1956, writ ref'd) (quoting 6 C.J.S. *Arbitration and*

*Award* § 1). Arbitration has been sanctioned in Texas since at least the time of our first state constitution in 1845. Tex. Const. art. XVI, § 13 (repealed), interp. commentary (Vernon 1955). The public policy of both our state[2] and federal governments favors agreements to resolve legal disputes through such voluntary settlement procedures. *See* Tex.Civ.Prac. & Rem. Code § 154.003 (Texas' Alternative Dispute Resolution statute); *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984) (citing "national policy favoring arbitration"). Both Texas and federal courts have noted their favorable disposition toward such agreements. *See e.g., Volt Information Sciences v. Board of Trustees,* 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *Southland Corp.,* 465 U.S. at 14–16, 104 S.Ct. at 860–61; *Neal v. Hardee's Food Sys. Inc.,* 918 F.2d 34, 37 (5th Cir.1990); *House Grain Co. v. Obst,* 659 S.W.2d 903, 905 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Manes v. Dallas Baptist College,* 638 S.W.2d 143, 145 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). Efficiency and lower costs are frequently cited as the main benefits of arbitration.[3]

## II.

When Texas courts are called on to decide if disputed claims fall within the scope of an arbitration clause under the Federal Act, Texas procedure controls that determination. *See Southland Corp.,* 465 U.S. at 16, n. 10, 104 S.Ct. at 861, n. 10; *see also Batton v. Green,* 801 S.W.2d 923, 928 (Tex.App.—Dallas 1990, no writ). Under the Texas Act, when a party contests the

---

**1.** Jack Anglin averred that the Anglin Company is a Michigan corporation and that it had transported machinery and equipment from Michigan to Texas to fulfill its obligations under the contract. He also stated that the billings for the project were prepared and transmitted to the City from Anglin's offices in Michigan.

**2.** At least 36 states, including Texas, have adopted all or part of the Uniform Arbitration Act to encourage and facilitate the use of arbitration.

**3.** *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (goal of Federal Act is the expedi-

tious resolution of claims and avoidance of cost and delay of litigation); *Shearson Lehman Hutton, Inc. v. McKay,* 763 S.W.2d 934, 939 (Tex. App.—San Antonio 1989, no writ). *See also Hartford Lloyd's Ins. Co. v. Teachworth,* 898 F.2d 1058, 1061 (5th Cir.1990) (arbitration aims to submit a dispute to a third party for speedy and efficient resolution without resort to the courts); *Manes,* 638 S.W.2d at 145; Jeffrey W. Stempel, *Pitfalls of Public Policy: The Case of Arbitration Agreements,* 22 St. Mary's L.J. 259, 269 (1990) ("courts tend to take longer, cost more money, and lack the expert fact finders found in arbitration").

applicability of an arbitration provision in an agreement, the court is instructed to proceed summarily to the determine the issue. TEX.REV.CIV.STAT.ANN. art. 225.

Because the City complains that Anglin failed to offer any evidence other than Jack Anglin's affidavit in support of its application to compel arbitration, we must decide how a trial court is to summarily determine the applicability of an arbitration clause. The nature of such a hearing is a matter of first impression in Texas.

Summary disposition of contested issues is the exception under our rules of civil procedure. Ordinarily, contested issues are decided after a plenary hearing, that is, a hearing at which witnesses present sworn testimony in person or by deposition rather than by affidavit. For example, our rules permit trial courts to render final judgments in civil cases on motions for summary judgment. A trial court may render a summary judgment based on a record consisting of deposition transcripts, interrogatory answers, and other discovery responses, along with the pleadings, admissions, affidavits, stipulations, and authenticated or certified public records before the court at the time the motion is heard. TEX. R.CIV.P. 166a(c). This procedure, as the title suggests, is summary in nature. *See In re Price's Estate*, 375 S.W.2d 900, 904 (Tex.1964); *see also Dae Won Choe v. Chancellor, Inc.*, 823 S.W.2d 740, 742 (Tex. App.—Dallas 1992, no writ) (summary judgment serves to summarily dispose of patently unmeritorious cases); *Beech Aircraft Corp. v. Jinkins*, 698 S.W.2d 722, 728 (Tex.App.—Houston [1st Dist.] 1985), *aff'd,* 739 S.W.2d 19 (Tex.1987) (summary judgment summarily disposes of cases when no questions of fact and judgment may be rendered as a matter of law). Our rules also prescribe summary determination of motions to transfer venue, objections to discovery requests, and special appearances contesting jurisdiction. These matters are likewise determinable on the basis of affidavits, pleadings, the results of discovery, and the stipulations of the parties. TEX.R.CIV.P. 87, 88 (venue); TEX.R.CIV.P. 166b(4) (objections to discovery); TEX. R.CIV.P. 120a(3) (special appearance).[4]

■ Because the main benefits of arbitration lie in expedited and less expensive disposition of a dispute, and the legislature has mandated that a motion to compel arbitration be decided summarily, we think it unlikely that the legislature intended the issue to be resolved following a full evidentiary hearing in all cases.[5] We also envision that the hearing at which a motion to compel arbitration is decided would ordinarily involve application of the terms of the arbitration agreement to undisputed facts, amenable to proof by affidavit. With these considerations in mind, we hold that the trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts.

### III.

■ Next we consider whether the Federal Act applies to this dispute. Section 2 of the Federal Act provides in pertinent part:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The Federal Act thus applies to all suits in state and federal court when the dispute

---

**4.** Live testimony may be considered at a special appearance, TEX.R.CIV.P. 120a(3), and on objections to discovery requests, TEX.R.CIV.P. 166b(4), but not at a summary judgment hearing, TEX. R.CIV.P. 166a(c) or venue hearing, TEX.R.CIV.P. 87, 88.

**5.** Commentators agree that a less than plenary hearing is desirable. *See* M. DOMKE & G. WILNER, COMMERCIAL ARBITRATION § 17:02 (rev. ed. 1984); R. RODMAN, COMMERCIAL ARBITRATION § 11.7 (1984).

concerns a "contract evidencing a transaction involving commerce." *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987); *Southland Corp.,* 465 U.S. at 14–16, 104 S.Ct. at 860–61; 9 U.S.C. § 1 ("commerce" means commerce "among the several States ..."). Nor is its application limited solely to interstate shipment of goods. *Prima Paint v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967); *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 243 (5th Cir.1986); *Lost Creek Util. v. Travis Indep. Painter,* 827 S.W.2d 103, 105 (Tex.App.—Austin 1992, writ denied).[6] Here, the material evidence before the court consisted of the pleadings, the contract, and Jack Anglin's affidavit, which states that Anglin transported materials across state lines pursuant to the contract and prepared the billings for the job in Michigan. Under the procedure we have approved here, the trial court, as well as this court, must accept as true the clear, direct, and positive evidence of an undisputed affidavit, even of a party's agent. *See Americana Motel, Inc. v. Johnson,* 610 S.W.2d 143 (Tex.1980) (uncontroverted testimony by an interested party may support summary judgment when testimony is clear, direct, and positive); *Whitehead v. Julian,* 476 S.W.2d 844, 845 (Tex.1972) (uncontroverted affidavit must be accepted as true); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). The undisputed evidence presented to the trial court thus established the applicability of the Federal Act.

## IV.

■ Anglin argues that the trial court erred in excluding the City's DTPA claims from the order compelling arbitration. The City responds that its DTPA claims are not subject to arbitration for two reasons: first, because its DTPA claims do not arise out of the contract and therefore are beyond the scope of the arbitration clause, and second, because the DTPA's nonwaiver provision, TEX.BUS. & COM.CODE ANN. § 17.42 (Vernon 1987),[7] prevents the City from waiving a judicial determination of its DTPA claims. Both of these contentions are without merit.

■ The DTPA claims arise out of Anglin's alleged misrepresentations regarding the quality of its services and materials used in its work.[8] Generally, a DTPA

---

**6.** Because the undisputed evidence clearly establishes interstate activity, the Federal Act governs arbitration of this dispute. We need not and do not today define the scope of the "involving commerce" clause. We do note, however, that some courts have focused on whether the contract itself indicates that the parties contemplated substantial interstate activity, so that the fortuity of diverse citizenship or ancillary travel across state lines would not alone trigger application of the Federal Act. *Metro Indus. Painting Corp. v. Terminal Constr. Co.,* 287 F.2d 382, 387 (2d Cir.1961) (Lumbard, C.J., concurring); *Warren v. Jim Skinner Ford, Inc.,* 548 So.2d 157, 160 (Ala.) *cert. denied,* 493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989); *Riverfront Properties, Ltd., v. Max Factor III,* 460 So.2d 948, 953 (Fla. Dist.Ct.App.1984); *Burke County Pub. Sch. Bd. of Educ. v. The Shaver Partnership,* 303 N.C. 408, 279 S.E.2d 816, 822 (1981); *but see Del E. Webb Constr. v. Richardson Hosp. Auth.,* 823 F.2d 145, 147–48 (5th Cir.1987) (rejecting the "substantial" contacts test in favor of "relating to" test in order to implement strong federal policy favoring arbitration).

**7.** That *section provides* in pertinent part:
   **Waivers: Public Policy**

Any waiver by a consumer of the provision of this subchapter is contrary to public policy and is unenforceable and void....
The version of § 17.42 in effect at the time permitted written contractual waiver by certain business consumers. The legislature broadened the categories of consumers eligible to waive DTPA remedies 1989. TEX.BUS. & COM.CODE ANN. § 17.42 (VERNON SUPP.1992) (excluding purchase or lease of family residence, waiver permitted by consumers in transactions exceeding $500,-000 who are represented by legal counsel, are not in significantly disparate bargaining positions, and who, along with their attorneys, sign express waivers in written contracts). John T. Montford, Will G. Barber, & Robert L. Duncan, *1989 Texas DTPA Reform: Closing the DTPA Loophole in the 1987 Tort Reform Laws and the Ongoing Quest for Fairer DTPA Laws,* 21 ST. MARY'S L.J. 525, 556–562 (1990).

**8.** Specifically, the City alleges:
   The false, misleading or deceptive acts or practices include ...
      1. Representing that goods or services were of a particular standard, quality or grade ... if they were that of another; and/or
      2. The failure to disclose information concerning goods or services which were known

claim for misrepresentation is considered separate and distinct from any breach of contract which may have also occurred. *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985); *see also Decision Control Systems, Inc. v. Personnel Cost Control, Inc.,* 787 S.W.2d 98, 100 (Tex.App.—Dallas 1990, no writ). However, under the supremacy clause of the United States Constitution, U.S. Const. art. VI, cl. 2, the Federal Act preempts all otherwise applicable state laws. *Perry,* 482 U.S. at 489, 107 S.Ct. at 2525; *Southland Corp.,* 465 U.S. at 14–16, 104 S.Ct. at 860–61 (Federal Act creates substantive rules applicable in state and federal courts to prevent states from limiting the enforceability of arbitration agreements); *see also Batton,* 801 S.W.2d at 927 (the Federal Act is substantive and is the law of Texas).

■■■ The primary purpose of the Federal Act is to require the courts to compel arbitration when the parties have so provided in their contract, despite any state legislative attempts to limit the enforceability of arbitration agreements. *Volt,* 489 U.S. at 474, 109 S.Ct. at 1253; *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 225, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Perry,* 482 U.S. at 490, 107 S.Ct. at 2525; *Southland Corp.,* 465 U.S. at 10, 104 S.Ct. at 858. To this end, the Federal Act preempts state statutes to the extent they are inconsistent with that Act. *See Volt,* 489 U.S. at 478, 109 S.Ct. at 1255. We likewise are of the opinion that federal law preempts application of the nonwaiver provision of the DTPA to prevent or restrict enforcement of this arbitration agreement. *See Commerce Park v. Mardian Construction Co.,* 729 F.2d 334, 338 (5th Cir. 1984) (claim under Texas Deceptive Trade Practices Act subject to arbitration under Federal Act).[9]

Furthermore, Texas law favors the joint resolution of multiple claims to prevent multiple determinations of the same mat-ter. *See Valero Energy Corp. v. Wagner & Brown,* 777 S.W.2d 564, 567 (Tex.App.—El Paso 1989, writ denied). The City alleges that Anglin's goods and services were less than Anglin represented they would be. Evidence to support these allegations will be required to establish the City's breach of contract claim. Although the City's misrepresentation claims are grounded in a legal theory distinct from its contract claim, they are factually intertwined, and thus are subject to the arbitration provision of the contract. For the foregoing reasons, we hold that the City's DTPA claims are arbitrable pursuant to the parties' agreement and shall be arbitrated under the Federal Act.

## V.

■■■ Finally, we must decide whether a party that has been wrongfully denied the benefits of its agreement to arbitrate is entitled to the extraordinary remedy of the writ of mandamus. Mandamus will issue only to correct a clear abuse of discretion or violation of a duty imposed by law when that abuse cannot be remedied by appeal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992); *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). In *Walker* we stated that "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion...." 827 S.W.2d at 840 (citations omitted). Because we have held that the trial court failed to correctly apply the Federal Act to the facts of this case, its decision in this regard amounts to a clear abuse of discretion under the *Walker* standard. The remaining question is whether Anglin has an adequate remedy on appeal.

Both the Texas and Federal Acts permit a party to appeal from an interlocutory order granting or denying a request to

---

at the time of the transaction, and such failure to disclose such information was intended *to induce the consumer into a transaction* into which the consumer would not have entered had the information been disclosed.

9. The parties to this arbitration agreement were of relatively equal bargaining strength. We do not foreclose the possibility of DTPA relief for a party establishing that an agreement to arbitrate was unconscionable and therefore unenforceable as a matter of law.

compel arbitration.[10] As we have noted, however, federal procedure does not apply in Texas courts, even when Texas courts apply the Federal Act. *See Southland Corp.*, 465 U.S. at 16 n. 10, 104 S.Ct. at 861 n. 10; *NCR Corp. v. Mr. Penguin Tuxedo Rental*, 663 S.W.2d 107, 108 (Tex.App.— Eastland 1983, writ ref'd n.r.e.). When a Texas court enforces or refuses to enforce an arbitration agreement pursuant to the Federal Act, we must determine whether that decision should be reviewed by interlocutory appeal or mandamus.[11]

■ Under Texas procedure appeals may be had only from final orders or judgments. TEX.CIV.PRAC. & REM.CODE § 51.-014.[12] Interlocutory orders may be appealed only if permitted by statute.[13] *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (orig. proceeding); *Henderson v. Shell Oil*, 143 Tex. 142, 182 S.W.2d 994, 995 (1944). A final judgment is one which disposes of all legal issues between all parties. *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex.1986). An order denying arbitration under the Federal Act meets neither the rule nor the statutory exceptions. Anglin and other similarly situated litigants who allege entitlement to arbitration under the Federal Act, and in the alternative, under the Texas Act, are burdened with the need to pursue parallel proceedings—an interlocutory appeal of the trial court's denial under the Texas Act, and a writ of mandamus from the denial under the Federal Act.

Although we can conceive of no benefit from such an unnecessarily expensive and cumbersome rule, we may not enlarge appellate jurisdiction absent legislative mandate. In the interests of promoting the policy considerations of rigorous and expedited enforcement of arbitration agreements, we urge the legislature to consider amending the Texas Act to permit interlocutory appeals of orders issued pursuant to the Federal Act. Such a procedure, already available for orders under the Texas Act, is preferable to reliance on the writ of mandamus to fill this gap in appellate jurisdiction.

■ Although mandamus relief will not issue merely because an appellate remedy may be more expensive and time-consuming than mandamus, it will issue when the failure to do so would vitiate and render illusory the subject matter of an appeal. Absent mandamus relief, Anglin would be deprived of the benefits of the arbitration clause it contracted for, and the purpose of

---

**10.** Article 238-2(A) of the Texas Act affords an aggrieved party a right to an interlocutory appeal from a grant or denial of arbitration under the Texas Act. Similarly, a party denied arbitration in federal court is entitled to an interlocutory appeal under federal procedure. *See Stedor Enter., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 730 (4th Cir.1991); *see also Arnold v. Arnold Corp.*, 920 F.2d 1269, 1274 (6th Cir.1990); 9 U.S.C. § 15 (1988), *amended by* 9 U.S.C. §§ 15, 16 (Supp.1992).

**11.** The courts of appeals have variously permitted appeal under the Texas Act, and mandamus or appeal under the Federal Act. *See Merrill Lynch v. Hughes*, 809 S.W.2d 679, 680–81 (Tex. App.—Corpus Christi 1991) (Texas Act allows for interlocutory appeal of order denying motion to compel arbitration), *dism'd as moot*, 827 S.W.2d 859 (Tex.1992); *Transwestern Pipeline v. Horizon Oil*, 809 S.W.2d 589, 591 (Tex.App.— Dallas 1991, writ dism'd w.o.j.) (interlocutory appeal reversing trial court's order denying motion to compel arbitration); *Merrill Lynch v. Wilson*, 805 S.W.2d 38 (Tex.App.—El Paso 1991, no writ); *Batton v. Green*, 801 S.W.2d 923, 929 (Tex.App.—Dallas 1990, no writ) (Texas law specifically allows an interlocutory appeal from an order denying an application to compel arbitra-

tion or granting an application to stay arbitration); *USX Corp. v. West*, 759 S.W.2d 764, 765 (Tex.App.—Houston [1st Dist.] 1988, no writ) (Texas Act "apparently permits interlocutory review of order denying application to compel arbitration"); *Mr. Penguin Tuxedo Rental*, 663 S.W.2d at 108 (when agreement to compel arbitration is unenforceable under the Texas Act, "the interlocutory appeal authorized by that act is not available"); *Central Tex. Clarklift, Inc. v. Simmons*, 540 S.W.2d 745, 746 (Tex.Civ.App.— Waco 1976, no writ) (although order denying motion to compel arbitration "is an interlocutory one, it is expressly appealable under the provisions of Article 238-2").

**12.** Texas does not have a statute comparable to 28 U.S.C. 1292(b), which in effect permits a federal district court to certify that an appeal is appropriate from an interlocutory order addressing a matter of controlling law.

**13.** This court has, however, deemed orders relating to sealing or unsealing court records to be final, appealable judgments. TEX.R.CIV.P. 76a(8).

providing a rapid, inexpensive alternative to traditional litigation would be defeated.[14] Accordingly, we conditionally grant the writ of mandamus and direct the trial court to order that all claims, including the City's DTPA claims, proceed to arbitration under the Federal Arbitration Act. The clerk is instructed to issue the writ only should the trial court fail to do so.

**14.** Indeed, the United States Supreme Court has apparently indicated that it will promptly review any state court decision to the contrary: "For us to delay review of a state judicial decision denying enforcement of the contract to arbitrate until the state-court litigation has run its course would defeat the core purpose of a contract to arbitrate." *Southland Corp.,* 465 U.S. at 7–8, 104 S.Ct. at 857.