Criminal Case Template














COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





THE VERLANDER FAMILY
LIMITED PARTNERSHIP,


 Appellant,


v.


SHARON JANELL VERLANDER,


 Appellee.

§


§


§


§


§

No. 08-02-00135-CV


Appeal from the


388th Judicial District Court


of El Paso County, Texas


(TC# 2000CM5988)


M E M O R A N D U M O P I N I O N


 This is an accelerated, interlocutory appeal from the denial of Appellant's, The
Verlander Family Limited Partnership ("the Partnership"), Motion for Stay of Litigation and
to Compel Arbitration in a divorce proceeding. For the reasons stated, we dismiss for lack
of jurisdiction.

I. SUMMARY OF THE EVIDENCE

 John M. Verlander ("John") and Appellee, Sharon Janell Verlander ("Sharon"), were
married on September 29, 1979. In August of 1991, John and Sharon entered into the
Partnership Agreement of Verlander Family Limited Partnership ("the Agreement"). The
Agreement was amended and restated on August 20, 1999. The purpose of the Partnership
was "to make a Profit, increase wealth, and provide a means for the Family to become
knowledgeable of, manage, and preserve Family Assets." John was named the initial General
Partner and a Limited Partner, while Sharon was named the other Limited Partner. 

 In September of 2000, Sharon filed her Petition for Divorce. On February 1, 2002,
she amended the divorce petition, naming the Partnership as a party. Sharon alleged that
John breached his fiduciary duty to her "by diluting, diminishing, encumbering, restricting
and limiting her community property interests in the stock owned by him and their
community estate in El Apple, Inc. and Verlander Enterprises, Inc. and other similarly related
business entities in which the parties have interest." She also alleged that John committed
actual and constructive fraud. Sharon requested that the court find the Partnership to be the
alter ego of John and "divide the alleged 'partnership' assets as the Court deems just and
right." 

 On February 26, 2002, John's counsel sent a letter to Sharon's counsel invoking the
ADR provisions contained in Article 18 of the Agreement. Sharon's counsel responded via
letter dated February 28, 2002, and maintained that the allegations in her First Amended
Petition for Divorce did not relate to the Agreement and thus the ADR provisions of the
Agreement were inapplicable. Sharon stated that her current claims against John were
related to his duties as a husband, not as a General Partner, and that she was not making a
claim or invoking a right as a limited partner under the Agreement. The Partnership moved
to stay litigation and compel arbitration. In its motion to compel, the Partnership asserted
that the 


Federal Arbitration Act governed because some of the assets it owned were located in New
Mexico. Further, in his affidavit in support of the motion to compel, John stated that "[t]he
business of the Family Partnership includes the management of properties located both in the
State of Texas and in the State of New Mexico." After a hearing, the trial court denied
arbitration, finding that "[f]or the purposes of the divorce litigation, whether the Family
Partnership is the alter ego of John M. Verlander is not subject to the ADR provisions of the
Partnership Agreement." The court deferred ruling on the remaining disputes until the alter
ego issue was resolved. 

 Accordingly, the Partnership filed a Petition for Writ of Mandamus under the Federal
Arbitration Act. See In re The Verlander Family Limited Partnership, No. 08-02-00134-CV,
2002 WL 731895, (Tex. App.--El Paso, April 25, 2002, pet. denied)(orig. proceeding)(not
designated for publication). Out of an abundance of caution, the Partnership also brought
an interlocutory appeal of the trial court's order in the event we determined that the Texas
General Arbitration Act rather than the FAA applied. See Russ Berrie and Company, Inc.
v. Gantt, 998 S.W.2d 713, 714-15 (Tex. App.--El Paso 1999, no pet.)(a litigant seeking
enforcement of an arbitration provision under the FAA must pursue relief through mandamus
proceeding, whereas a party asserting a right to arbitration under the Texas Arbitration Act
may seek relief through an interlocutory appeal). In the mandamus action, this Court held
that based on the record before us, the trial court did not clearly abuse its discretion and the
relief requested in the petition for mandamus was denied. Id. at *1. 


II. DISCUSSION


 In its sole issue on appeal, the Partnership argues that the trial court abused its
discretion in denying its Motion for Stay of Litigation and to Compel Arbitration because
there was no evidence to support the denial. Appellee argues that the appeal should be
dismissed for lack of jurisdiction because 1) this Court has already accepted mandamus
jurisdiction under the Federal Arbitration Act and ruled on the merits in the companion
mandamus proceeding; and 2) Appellant moved for arbitration in the trial court solely under
the Federal Arbitration Act. To determine subject matter jurisdiction over and thus the
proper disposition of the matter before us, we must first determine whether the FAA or the
TGAA applies.

ACCELERATED APPEAL OR MANDAMUS?

 A trial court's order denying arbitration under the Texas Arbitration Act is subject to
interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. 171.098(a) (Vernon Supp. 2002).
However, relief from a denial of arbitration sought under the Federal Arbitration Act must
be pursued by mandamus. 9 U.S.C.A. § 1, et seq. (West 1999); EZ Pawn Corp. v. Mancias,
934 S.W.2d 87, 91 (Tex. 1996). The contractual arbitration clause in this case does not
specifically invoke either the Texas Arbitration Act or the Federal Arbitration Act, and the
trial court made no ruling on which Act applies.

 Where the parties designate in the arbitration agreement which arbitration statute they
wish to have control, the court should apply their choice. D. Wilson Constr. Co. v. Cris
Equipment Co., 988 S.W.2d 388, 392 (Tex. App.--Corpus Christi 1999, orig. proceeding). 


Here, the parties did not state which act they were to apply, but in Article 19 of the
Agreement, the parties state that the Agreement shall be governed by the applicable laws of
the State of Texas. For purposes of our subject matter jurisdiction, however, jurisdiction
cannot be conferred by the parties' agreement. Russ Berrie & Co., 998 S.W.2d at 715. 
Accordingly, the agreement and record before us are first examined under the federal act to
see if there is evidence of a transaction affecting interstate commerce. See In re Godt, 28
S.W.3d 732, 737 (Tex. App.--Corpus Christi 2000, orig. proceeding) (federal act will not be
applied if the contract does not relate to interstate commerce).

 The FAA applies to all suits in state or federal court when the dispute concerns a
contract evidencing a transaction involving "commerce." Jack B. Anglin Co. v. Tipps, 842
S.W.2d 266, 269-70 (Tex. 1992); In re Gardner Zemke Company, 978 S.W.2d 624, 626 (Tex.
App.--El Paso 1998, orig. proceeding). "Commerce" is broadly construed and encompasses
contracts relating to interstate commerce. Gardner Zemke, 978 S.W.2d at 626. The issue is
not whether the parties' dispute affects interstate commerce, but whether their dispute
concerns a transaction that affects interstate commerce. See Jack B. Anglin, 842 S.W.2d at
272; In re Education Management Corp., 14 S.W.3d 418, 423 (Tex. App.--Houston [14th
Dist.] 2000, orig. proceeding). The FAA does not require a substantial effect on interstate
commerce; rather, it requires only that commerce be involved or affected. In re L & L
Kempwood Assoc., L.P., 9 S.W.3d 125, 127 (Tex.1999) (orig. proceeding). When, as here,
there is no express agreement to arbitrate under the FAA, the question of whether the parties'
transaction affects interstate commerce is one of fact. In re Profanchik, 31 S.W.3d 381, 384
(Tex. App.-- Corpus Christi 2000, orig. proceeding). The existence of interstate commerce
may be shown in a variety of ways: location of headquarters in another state; transportation
of materials across state lines; manufacture of parts in a different state; billings prepared out
of 

state; interstate mail and telephone calls in support of a contract. Id. at 384-85, (citing Jack
B. Anglin, 842 S.W.2d at 270).

 We have examined the record of the hearing on the motion to compel arbitration and
the only mention of either act is by counsel for Appellant. After the trial court announced
its ruling, counsel stated, "Your Honor, I think the Court is aware that the Texas statute
provides that if the Court denies the Motion to Compel Arbitration, I have a right to an
interlocutory appeal, which, if the Court grants the Motion to Compel, there is no appeal." 
However, as noted earlier, Appellant asserted that the Federal Arbitration Act governed
because some of the assets it owned were located in New Mexico. Further, in his affidavit
in support of the motion to compel, John states that "[t]he business of the Family Partnership
includes the management of properties located both in the State of Texas and in the State of
New Mexico." In her response to the motion to compel, Appellee argued that Texas law
governed the arbitration issue, but admitted that even if federal law governed, the result
would be the same because the claims she asserted against John were outside of the scope
of the Agreement and thus outside the scope of the arbitration clause.

 Therefore, based on the record before us, we find that the arbitration clause is
governed by the Federal Arbitration Act, and the trial court's order denying arbitration is not
subject to interlocutory appeal. 9 U.S.C.A. § 2; EZ Pawn, 934 S.W.2d at 91. Accordingly,
we dismiss the 


interlocutory appeal for want of jurisdiction. Pennzoil Company v. Arnold Oil Company,
Inc., 30 S.W.3d 494, 498 (Tex. App.--San Antonio 2000, orig. proceeding).

February 13, 2003

 

 ___________________________________________ 
RICHARD BARAJAS, Chief Justice





Before Panel No. 5

Barajas, C.J., Chew, J., and Preslar, C.J. (Ret.)

Preslar, C.J. (Ret.) sitting by assignment