ELM CREEK VILLAS HOMEOWNER
ASS'N, INC., Pat Grimes, and John
Corbisiero, Appellants,

v.

BELDON ROOFING & REMODELING
CO., Appellees.

ELM CREEK VILLAS HOMEOWNER
ASS'N, INC., Pat Grimes, and John
Corbisiero, Appellant,

v.

AMERICAN CEMWOOD
CORPORATION,
Appellee.

Nos. 04–96–00205–CV, 04–96–00416–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 27, 1996.

Rehearing Overruled Jan. 30, 1997.

Edward P. Cano, Law Offices of Edward P. Cano, San Antonio, for appellants.

C. David Kinder, James D. Rosenblatt, Jo Beth Eubanks, Akin, Gump, Strauss, Hauer & Feld, L.L.P., San Antonio, Mike Windsor, Loe, Warren, Rosenfield, Kaitcher & Hibbs, P.C., Fort Worth, for appellees.

Before RICKHOFF, LÓPEZ and GREEN, JJ.

## OPINION

GREEN, Justice.

Appellants, Elm Creek Homeowner's Association (Elm Creek), Pat Grimes, and John Corbisiero, brought these accelerated, interlocutory appeals from two separate orders compelling arbitration. The orders were entered in response to pleas in abatement filed by appellees Beldon Roofing and Remodeling (appeal number 96–205–CV) and American Cemwood Corporation (appeal number 96–416–CV). Both appeals were subsequently consolidated and submitted together. For the following reasons, the appeals are dismissed for lack of jurisdiction, and appellate sanctions are imposed.

## BACKGROUND

*The Cast of Characters*

Elm Creek contracted with Beldon Roofing and Remodeling Company (Beldon) to install new roofs on 33 residential units in the Elm Creek Villas subdivision. Pat Grimes and John Corbisiero are owners of two of the residential units. Grimes was also the president of the Elm Creek Homeowner's Association who reviewed and signed the roofing contract with Beldon. Corbisiero is the current president of Elm Creek and a past board member who was involved in the negotiation and execution of the roofing contract. Both individuals are former real estate agents. Appellee Dick Zucker is the vice president of Beldon who negotiated the sales contract. American Cemwood is the manufacturer of the roofing shakes installed by Beldon at Elm Creek Villas.

*The Agreements*

In February of 1994, Beldon and Elm Creek began to discuss the repair and replacement of the roofs at Elm Creek Villas. Zucker presented Grimes and Corbisiero with a sample agreement, which included three documents: (1) "Shingle Roofing Proposal and Contract," (2) "Limited Residential Warranty," and (3) "Standard Residential General Conditions." Negotiations continued and, on June 1, 1994, Elm Creek and Beldon executed a contract to replace the existing wooden roof shakes with shakes manufactured by American Cemwood.

Grimes signed the agreement on behalf of Elm Creek. The three documents signed by him—(1) the "Shingle Roofing Proposal and Contract," (2) the "Limited Residential Warranty," and (3) the "Standard Residential General Conditions"—each contained an arbitration clause. Paragraph 9 of the "Shingle Roofing Proposal and Contract" provided:

> Any controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled by arbitration in accordance with the construction industry arbitration rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

The clause in the "Limited Residential Warranty" and the "Standard Residential General Conditions" stated:

> Any controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled by arbitration, *binding on both parties,* in accordance with the construction industry arbitration rules of the

American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Each clause appeared in the document above the signature line, and the clause in the "Limited Residential Warranty" appeared in all capital letters immediately above the signature line. The italicized portion, "*binding on both parties*," was not included in the clauses of the original sample documents given to Elm Creek in February of 1994. The "Standard Residential Conditions" signed by Grimes also contained the following provision:

> This proposal and contract shall become a contract under the laws of the state where the work is to be done and will thereby be a binding contract upon both Beldon and Buyer. This proposal and contract shall be the entire agreement between the parties, notwithstanding any previous communications or negotiations, whether oral or written, there being no covenants or agreements, inducements, guarantees, warranties or considerations, other than as set out herein. It is agreed that any changes in this proposal and contract must be approved in writing by Beldon at its office address shown in these documents.

*The Dispute*

Disputes subsequently arose between Elm Creek and Beldon concerning the quality of the roofing shakes and the installation. Beldon initiated arbitration proceedings on November 22, 1995. Elm Creek filed suit on January 19, 1996, alleging various causes of action and seeking temporary and permanent injunctive relief from arbitration. Beldon and Zucker responded by filing a plea in abatement, motion to compel arbitration, answer and counterclaim. Following an evidentiary hearing, the trial court denied appellants' application for injunctive relief and granted Beldon's motion to abate and motion to compel arbitration. Appellants immediately brought an interlocutory appeal from

the trial court's order of February 15, 1996 (cause number 96–205–CV).

Later, American Cemwood also filed a plea in abatement and asked that all claims between Elm Creek and Cemwood be ordered to arbitration. Cemwood based its argument on the fact that the contract between Beldon and Elm Creek mentioned Cemwood by name and incorporated the manufacturer's 50-year warranty; there was no written agreement between Elm Creek and Cemwood. Following an evidentiary hearing, the trial judge granted the plea in abatement and ordered all claims against Cemwood sent to arbitration. This order, which was signed on April 19, 1996, was the subject of a second interlocutory appeal (cause number 96–416–CV). Both cases were subsequently consolidated and submitted together. Although requested by appellants, the trial court did not enter findings of fact and conclusions of law.[1]

### DISCUSSION

*Introduction*

In its appeal from the order granting Beldon's motion to compel arbitration, Elm Creek raises three points of error: (1) the trial court erred in granting Beldon's plea in abatement and motion to compel binding arbitration of all claims between Elm Creek and Beldon; (2) the trial court erred in denying Elm Creek's request for an injunction staying binding arbitration because the arbitration contract between Elm Creek and Beldon was unconscionable; and (3) the trial court erred in denying Elm Creek's request for an injunction staying binding arbitration proceedings because the arbitration contract between Elm Creek and Beldon should have been set aside on equitable grounds. As for American Cemwood, Elm Creek claims the trial court erred in granting American Cemwood's plea in abatement because there is no agreement to arbitrate between Elm Creek and American Cemwood. Both Beldon and American Cemwood claim we should dismiss

---

1. We note, however, that a trial court is not required to enter findings of fact and conclusions of law in an accelerated appeal. Tᴇx.R.Aᴘᴘ.P. 42(a)(1); *Smith Barney Shearson, Inc. v. Finstad*, 888 S.W.2d 111, 114 (Tex.App.—Houston [1st Dist.] 1994, no writ). Furthermore, appellants have not raised the issue.

the appeals for lack of jurisdiction.[2] This argument will be the focus of our discussion.

*Jurisdiction*

 Beldon correctly notes that the trial courts' orders compelling arbitration are interlocutory, and that appeals of interlocutory orders are permitted only by statute. Under the Texas Arbitration Act, appeals may only be taken from final orders or judgments which dispose of all the legal issues and parties. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992); *Gathe v. Cigna Healthplan of Texas, Inc.*, 879 S.W.2d 360, 362 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Bethke v. Polyco, Inc.*, 730 S.W.2d 431, 434 (Tex.App.—Dallas 1987, no writ); *Citizens Nat'l Bank v. Callaway*, 597 S.W.2d 465, 466 (Tex.Civ.App.—Beaumont 1980, writ ref'd). Interlocutory orders, like the ones raised in this case, may be appealed only if such appeals are permitted by statute. *Jack B. Anglin*, 842 S.W.2d at 272; *Gathe*, 879 S.W.2d at 362.

 Unfortunately for appellants, however, orders compelling arbitration do not fall within the coverage of any statute which would allow their appeal. The general Texas statute permitting appeal of interlocutory orders does not include an order compelling arbitration as one of those which may be appealed. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.1996). Nor does the Texas Arbitration Act, which provides for an interlocutory appeal from (1) an order denying an application to compel arbitration; (2) an order granting an application to stay arbitration; (3) an order confirming or denying confirmation of an award; (4) an order modifying or correcting an award; (5) an order vacating an award without directing a rehearing; or (6) "a judgment or decree entered pursuant to the provisions of this chapter." TEX.CIV.PRAC. & REM.CODE ANN. § 171.017 (Vernon Supp.1996), formerly TEX.

REV.CIV.STAT.ANN. arts. 238-2 (Vernon 1987), Acts 1965, 59th Leg., R.S. ch. 689, effective January 1, 1966.

Four different Texas courts, including this one, have noted that an order compelling arbitration under the Texas or Federal Arbitration Acts is an unappealable interlocutory order. *See Gathe v. Cigna Healthplan of Texas, Inc.*, 879 S.W.2d at 362; *Bethke v. Polyco, Inc.*, 730 S.W.2d at 434; *McMullen v. Yates*, 697 S.W.2d 500, 501–02 (Tex.App.—San Antonio 1985, orig. proceeding); *Citizens Nat'l Bank v. Callaway*, 597 S.W.2d at 466.[3] In *McMullen v. Yates*, for example, we assumed, without deciding the issue, that the trial court had erred in compelling arbitration; both sides acknowledged that an order compelling arbitration was not subject to judicial review until completion of the arbitration and entry of the final judgment by the district court. 697 S.W.2d at 501–02 (citing *Citizens Nat'l Bank of Beaumont v. Callaway*). In *Callaway*, the Beaumont court of appeals explained the legislative intent in denying the right to appeal an order compelling arbitration:

> If the court denies arbitration, that puts an end to the matter and, if the moving party desires relief, he must perfect his appeal. Such is tantamount to a take nothing judgment in a suit for damages. On the other hand—as we have in our case, an order compelling arbitration—the court has simply taken the first step in the ultimate disposition of the dispute between the parties. The Court still has jurisdiction to modify the award [under TEX.CIV.PRAC. & REM.CODE ANN. § 171.015] and to confirm, correct, and enforce such an award under [TEX.CIV.PRAC. & REM.CODE ANN. § 171.016].

597 S.W.2d at 466. The court concluded:

> The order entered by the trial court simply required the parties to arbitrate; the ques-

---

2. American Cemwood's jurisdictional arguments were raised in a motion to dismiss for lack of jurisdiction. Beldon's jurisdictional arguments were raised in its brief. To simplify matters, we will address both sets of arguments together.

3. Nearly all of the arbitration cases cited by appellants regarding an interlocutory appeal concern the trial court's *denial* of arbitration to a party seeking it. *See, e.g., Fridl v. Cook*, 908 S.W.2d 507, 509 (Tex.App.—El Paso 1995, writ

dism'd w.o.j.); *Smith Barney Shearson, Inc. v. Finstad*, 888 S.W.2d 111, 113 (Tex.App.—Houston [1st Dist.] 1994, no writ); *City of Alamo v. Garcia*, 878 S.W.2d 664, 664 (Tex.App.—Corpus Christi 1994, no writ). Appellate courts routinely grant mandamus relief to those denied their right to arbitrate. *See, e.g., Prudential Securities, Inc. v. Marshall*, 909 S.W.2d 896, 897 (Tex.1995); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 267 (Tex.1992).

tions of whether the defendant was required to arbitrate, had exercised its option in a timely manner, or had effectively withdrawn such exercise of its option have not yet been determined. These issues remain in the trial court untried and unadjudicated. The order entered is not an appealable judgment and this court had no jurisdiction over the question presented.

*Id.* (citations omitted) Likewise, in *Bethke v. Polyco,* the Dallas court held that appellate review of a trial court's determination to compel arbitration can only be had from a final judgment; an order compelling arbitration was not an appealable judgment. 730 S.W.2d at 434.

The Texas Legislature seems to have approved this line of cases when it redesignated and amended TEX.REV.CIV.STAT.ANN. art. 238–2 (Vernon Supp.1997). *See* Acts 1995, 74th Leg., R.S. ch. 588, § 1, effective September 1, 1995. The current form of the statute, TEX.CIV.PRAC. & REM.CODE ANN. § 171.017 (Vernon Supp.1997), as we have already noted, discusses a number of situations regarding arbitration from which an appeal can be taken. While the statute now provides that an order denying an application to compel arbitration or an order staying arbitration may be appealed, no mention is made of orders *compelling* arbitration. *Id.* By not adding orders compelling arbitration to the list of appealable orders in § 171.017, the Texas Legislature seems to have approved the line of cases construing former article 238–2. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981) (holding that "every word excluded from a statute must also be presumed to have been excluded for a purpose.").

The only contrary authority we have been able to find is a statement in *Jack B. Anglin Co. v. Tipps.* In that case, which was decided before the recent amendment of article 238–2, the Texas Supreme Court stated that "[b]oth the Texas and Federal [Arbitration] Acts permit a party to appeal from an interlocutory order *granting or denying a request to compel arbitration.*" *Id.* at 271–72 (emphasis added). In *Gathe v. Cigna Healthplan of Texas, Inc.,* however, the Houston Fourteenth Court of Appeals concluded this

statement was dicta and elected not to follow it. 879 S.W.2d at 362. They reasoned:

First, the case was a mandamus proceeding, not an appeal. Second, the order at issue in the case was an order *denying* the relator's application to compel arbitration. Further, we are unable to find support for the court's statement, either in the language of the Texas Act, or in the cases cited by the court, which all state that an order denying arbitration is appealable, but do not address orders compelling arbitration. Therefore, we elect not to follow the dicta in *Jack B. Anglin,* and hold that an order compelling arbitration under the Texas Act is not appealable.

*Id.* We agree with the Houston court that the dicta in *Jack B. Anglin* does not control the outcome of this appeal, and therefore, that an order compelling arbitration under the Texas Arbitration Act is not appealable.

■ The only remaining question is whether Elm Creek can circumvent § 171.017 by arguing they are really appealing the denial of an injunction requesting a stay of the arbitration proceedings. Section 51.014(4) of the Texas Civil Practice and Remedies Code authorizes an interlocutory appeal from orders granting or denying a temporary injunction. TEX.CIV.PRAC. & REM. CODE ANN. § 51.014(4) (Vernon Supp.1996). Beldon argues that Elm Creek is attempting to circumvent § 171.017 by cloaking an otherwise unappealable order in injunction terms. We agree.

■ Generally, when a party appeals from two interlocutory orders, only one of which is made appealable by statute, the proper course is to dismiss that portion which is non-appealable and to rule on the portion from which an appeal may be taken. *See National Western Life Ins. Co. v. Walters,* 663 S.W.2d 125, 126 (Tex.App.—Austin 1983, no writ). In this case, however, we conclude, that Elm Creek is simply attempting to appeal an otherwise unappealable order by disguising it as an injunction. We note, for example, that the injunctive relief Elm Creek sought is really nothing more than a request to prohibit Beldon from arbitrating the dispute. Assuming such an appeal were permissible (and we do not believe it is), the

arguments and points of error brought by Elm Creek attack only the decision to compel arbitration, not the denial of injunctive relief. Elm Creek's brief scarcely even mentions the portion of the order denying the request for an injunction, much less analyzes it under the principles of law which govern injunctive relief. Arbitration, so heavily favored both under statute and caselaw, is not so easily avoided.

■ When, as in this case, an appellate court lacks jurisdiction, it may not address the merits of the appeal. *Callaway*, 597 S.W.2d at 466; *see also Gathe*, 879 S.W.2d at 363 (appellate courts commit fundamental error when they assume jurisdiction over an interlocutory order if not authorized by statute). We may not act except to dismiss the appeal for want of jurisdiction. *Callaway*, 597 S.W.2d at 466. Therefore, the appeal must be dismissed for lack of jurisdiction. For this reason, we will not address appellants' points of error.

*Appellate Sanctions*

The only remaining issue concerns Beldon's cross-point, which argues that we should sanction appellants under TEX. R.APP.P. 84 for filing a frivolous appeal. American Cemwood also claims this appeal was taken for delay and without sufficient cause, and that sanctions should be imposed pursuant to rule 84. Again, we agree.

We recently addressed the issue of frivolous appeals in *Campos v. Investment Management Props., Inc.*, 917 S.W.2d 351 (Tex. App.—San Antonio 1996, writ denied). We imposed sanctions on a party who affirmatively misrepresented the law to the court on appeal. *Id.* at 358 (Green, J., concurring). We found that the appellant had no reasonable basis to believe the case would be reversed on appeal, and that the appeal was taken for delay tactics only. *Id.* at 356.

■ Our *Campos* opinion also noted that we may impose sanctions of up to ten times the total taxable costs against an appellant for bringing a frivolous appeal. *Id.* at 356. But, an award of damages under rule 84 will be imposed only if the record shows the appellant has no reasonable expectation of reversal, and the appellant has not pursued the appeal in good faith. *Finch v. Finch*, 825 S.W.2d 218, 226 (Tex.App.—Houston [1st Dist.] 1992, no writ). To justify sanctions, we must determine that the appeal was taken for delay only and without sufficient cause. *Eustice v. Grandy's*, 827 S.W.2d 12, 15 (Tex.App.—Dallas 1992, no writ); *Jones v. Colley*, 820 S.W.2d 863, 867 (Tex. App.—Texarkana 1991, writ denied). In making this determination, we must review the case from appellant's point of view at the time the appeal was taken, and decide whether he had any reasonable grounds to believe the case would be reversed. *Campos*, 917 S.W.2d at 356.

■ After reviewing the record and the relevant law, we conclude the appellants had no reasonable basis to believe their case would be reversed on appeal. We note, for example, that American Cemwood filed its motion to dismiss for lack of jurisdiction on May 29, 1996. This motion clearly raised the question of whether the trial court's April 19th order was a final, appealable order. Even so, appellants filed a brief (in appeal number 96–416–CV) which cited no authority for an interlocutory appeal, save for the cryptic statement, "This appealable interlocutory order is before this Court of Appeals in case no. 94–96–205–CV." Turning to appellants' brief in appeal number 96–205–CV, which involves Beldon Roofing and Remodeling, we note again that appellants cite virtually no authority to support an interlocutory appeal, except for the cursory statement, "Judge Gaither also granted Appellees [sic] Motion to Compel under Section 171.002(a) of the Texas Civil Practice and Remedies Code which was subject to interlocutory appeal." Appellants cite § 171.017(a)(1) of the Texas Civil Practice and Remedies Code for support of this statement, but the statute actually provides for interlocutory appeals from orders *denying* an application to compel arbitration. Again, no mention is made of orders *granting* an application to compel arbitration—the situation in the present case.

During oral argument, when we asked appellants' counsel about the statutory basis for these appeals, he reluctantly admitted that § 171.017 of the Texas Civil Practice and

Remedies Code does not give appellants the right to appeal. Given the representations contained in appellants' brief, however, this eleventh-hour conversion is dubious, if not misleading. Although appellants tried to seek refuge under § 51.014(4) of the Texas Civil Practice and Remedies Code, the provision, as we have already noted, simply does not apply to this case. In other words, there is nothing in either the record or the caselaw to justify an appeal like the present one.

As we have noted in the past, the mere fact that an interlocutory appeal is theoretically possible does not mean one should be filed, nor does it immunize frivolous appeals like the present one from sanctions, whether imposed pursuant to a motion for sanctions or sua sponte. *See* Tex.R.App.P. 84 (recognizing that sanctions may be imposed with or without a request). An appeal must be based upon more than wishful thinking. Accordingly, we sustain the appellees' cross-points and assess sanctions against appellants in the amount of two times the taxable costs of these consolidated appeals, or $1,068.00. This amount shall be awarded equally between the appellees, Beldon Roofing and Remodeling and American Cemwood Corporation. Furthermore, the awarded sanctions shall earn interest at a rate of ten percent (10%) per annum from the date of this Court's judgment until paid in full.

The appeals are dismissed; however, judgment for sanctions is awarded against appellants.