TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00111-CV






Qwest Communications International Inc. and Qwest


Communications Corporation, Appellants



v.



AT&T Corp. and AT&T Communications of the


Southwest, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 97-13778, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 Qwest Communications International Inc. and Qwest Communications Corporation
(together "Qwest") appeal from a district court order which denied both Qwest's motion to strike
a previous order and Qwest's motion to determine that an agreement between Qwest on the one
hand, and AT&T Corp. and AT&T Communications of the Southwest, Inc. (together "AT&T")
on the other, is unenforceable. Because the district court's order is interlocutory and not
appealable, we will dismiss the appeal for lack of jurisdiction.


BACKGROUND

 On December 12, 1997, AT&T filed suit against Qwest in district court alleging
that on three separate occasions, while constructing its own fiber optic network, Qwest severed
fiber optic cables of AT&T. (1) In its petition, AT&T sought a temporary restraining order, a
temporary injunction, a permanent injunction, and damages for Qwest's alleged negligence. The
district court, without notice to Qwest, issued a temporary restraining order requiring Qwest to
refrain from engaging in certain construction that could further damage AT&T's cables, and set
AT&T's application for a temporary injunction for hearing on December 18.

 At the time of the hearing, the parties informed the court that they had resolved the
matters set for hearing and were "requesting that the Court enter the following agreement, which
shall be enforceable by contempt powers of this court or any other court of competent
jurisdiction." The "agreement" was then read into the record. Its substantive terms essentially
restrict excavation work and boring operations (2) by Qwest when engaged in construction in the
vicinity of an existing AT&T cable, set forth procedures for Qwest to notify AT&T of its
activities, compel meetings between Qwest and AT&T, require approval of Qwest's work plans
by AT&T, and allow AT&T to have a site representative present during Qwest's operations in
proximity to an AT&T cable. The agreement also dissolved the bond filed by AT&T to obtain
the temporary restraining order and released AT&T and its surety. It specifically provided that
it did not release Qwest from liability for prior actions and was neither a settlement of any claim
for damages nor an admission of any liability for damages. Finally, the agreement expires three
years from its date if not extended or modified. The district court apparently orally approved the
agreement and requested it be reduced to writing, circulated for approval as to form, and returned
to the court for signature. (3)

 Following the hearing, AT&T forwarded to Qwest a draft of a proposed order
which AT&T contends is an accurate representation of what had been orally presented to the court. 
Qwest, however, objected to the proposed order on the basis that the order omitted a term
specifically agreed to on December 18 and contained a "unilateral change" to which Qwest had
not agreed, and refused to sign. Qwest has never approved, as to form or substance, any written
order embodying the terms of the December 18 agreement.

 On January 22, 1998, AT&T filed a motion for contempt and sanctions alleging that
Qwest had violated the December 18 agreement on 52 separate occasions. A show cause hearing
was held on February 17 at which AT&T asked the court to (1) enter the order announced on
December 18; (2) punish Qwest for violating it; and (3) sanction Qwest for its "contumacious,
outrageous behavior." At the hearing, AT&T presented an "Agreed Order," which it asserted
was a correct rendition of the December 18 agreement. Qwest objected to this order arguing that
two paragraphs regarding boring operations were incomplete and did not accurately reflect the
agreement between the parties. Over Qwest's objection, the court signed the order, noting that
the language of the order was identical to that read into the record on December 18, but suspended
enforcement of the objectionable boring provisions pending a future hearing, which the court set
for February 25.

 Qwest then moved to strike the February 17 order, to modify it, or to determine
the parties had never entered into an agreement enforceable under Rule 11 of the Texas Rules of
Civil Procedure. (4) At the February 25 hearing, the district court considered Qwest's motions as
well as those of AT&T for contempt and sanctions and by order signed March 25 denied all of
them. The district court also lifted its stay of the provisions relating to boring contained in the
February 17 order. The March 25 order contains findings of fact and conclusions of law which
reflect, inter alia, the district court's determination that the December 18 agreement was in fact
an enforceable Rule 11 agreement. On appeal, Qwest asserts seven points of error challenging
the February 17 order.

 In response, AT&T contends in both its brief and by separate motion that the
February 17 order is not an interlocutory appealable order, (5) and that this Court has no jurisdiction
to entertain Qwest's appeal.


DISCUSSION We must first determine AT&T's jurisdictional complaint, as without jurisdiction
we can go no further. Generally, appeals may be taken only from final orders or judgments. See
Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992). "A final judgment is one
which disposes of all legal issues between all parties." Id. at 272 (citing Hinde v. Hinde, 701
S.W.2d 637, 639 (Tex. 1986)); see also National W. Life Ins. Co. v. Walters, 663 S.W.2d 125,
126 (Tex. App.--Austin 1983, no writ). An interlocutory order, however, "leaves something
further to be determined and adjudicated in disposing of the parties and their rights." Taliaferro
v. Texas Commerce Bank, 660 S.W.2d 151, 152 (Tex. App.--Fort Worth 1983, no writ) (citing
Kinney v. Tri-State Tel. Co., 222 S.W. 227, 230 (Tex. 1920)). The parties agree, and we concur,
that the district court's February 17 order is an interlocutory order. "Appellate courts have
jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly
provides appellate jurisdiction." Stary v. DeBord, 967 S.W.2d 352, 352 (Tex. 1998); see also
Tipps, 842 S.W.2d at 272. Qwest asserts that the February 17 order is a temporary injunction and
therefore an interlocutory appealable order. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(4) (West Supp. 1999). AT&T, however, characterizes the order as one enforcing a
"valid contract" (the December 18 agreement) and accuses Qwest of "creating the illusion that a
temporary injunction is being appealed."

 "The purpose of a temporary injunction is to preserve the status quo of the subject
matter of a suit pending a final trial of the case on its merits." Camp v. Shannon, 348 S.W.2d
517, 519 (Tex. 1961). The writ restrains the doing of certain acts during the pendency of the suit 
to which it is ancillary. See Laredo Junior College Dist. v. Zaffirini, 590 S.W.2d 535, 536 (Tex.
Civ. App.--San Antonio 1979, writ ref'd n.r.e.) (citing Riggins v. Thompson, 71 S.W. 14 (Tex.
1902)). An order granting a temporary injunction must set the case for trial on the merits. See
Tex. R. Civ. P. 683. The granting court must also fix the amount of security the applicant shall
give before the writ will issue. See Tex. R. Civ. P. 684.

 The February 17 order does not satisfy these traditional criteria of a temporary
injunction. The order recites that the parties reached an agreement and asked the court to "enter"
it. The order then sets forth several provisions reflecting how Qwest will conduct excavation and
boring activities when in the near vicinity of an existing AT&T buried cable. These provisions
go beyond what is necessary to preserve the status quo that existed immediately prior to the filing
of suit and do more than merely extend the terms of the previous temporary restraining order. 
While the temporary restraining order concerns AT&T's fiber optic line linking Austin with San
Antonio and the remainder of South Texas and Mexico, the February 17 order applies to all of
Qwest's operations in the United States. The order specifically dissolves the bond which AT&T
posted as security to obtain the original temporary restraining order and releases AT&T and its
surety. No provision is made for other security. (6) The order does not purport to be in effect
during the pendency of the suit and does not set a trial date, (7) but is effective for three years from
its date. Significantly, it is not made subject to further modification by the district court while the
case is pending, but instead may only be extended or modified in a writing signed by the parties. 
Finally, the record before us does not reflect that a writ of injunction was issued in response to
the district court's order.

 While the December 17 order uses the words "desist and refrain," the use of such
words alone does not compel a finding that the order is a temporary injunction. See Sobel v.
Taylor, 640 S.W.2d 704, 708 (Tex. App.--Houston [14th Dist.] 1982, no writ) (use of word
"enjoined" did not require order to be deemed temporary injunction).

 It is clear that Qwest and AT&T on December 18 intended to resolve several of the
issues pending before the district court. It is equally clear that they meant to leave other issues,
such as past damages, for resolution at trial. AT&T contends, and the district court concurs, that
an enforceable agreement was achieved. Qwest is adamant that no agreement ever existed and that
if it did, Qwest withdrew its consent prior to rendition of the district court's order. See S & A
Restaurant Corp. v. Leal, 892 S.W.2d 855, 857 (Tex. 1995) (party may revoke consent any time
before judgment is rendered).

 An appeal cannot be taken from an otherwise non-appealable order by seeking to
disguise it as an injunction. See Elm Creek Villas Homeowner Ass'n, Inc. v. Beldon Roofing &
Remodeling Co., 940 S.W.2d 150, 154 (Tex. App.--San Antonio 1996, no writ). An appeal from
an interlocutory order granting or refusing a temporary injunction may not be used as a vehicle
for carrying other non-appealable interlocutory orders and judgments to the appellate court. 
Browne v. Bear, Stearns & Co., Inc., 766 S.W.2d 823, 824 (Tex. App.--Dallas 1989, writ
denied); see also Walters, 663 S.W.2d at 126.

 Qwest attempts to wrap in the cloak of a temporary injunction the district court's
non-appealable interlocutory order enforcing an agreement compromising certain issues in dispute. 
This is impermissible.

 We hold that the February 17 order is not a temporary injunction, but a non-appealable interlocutory order enforcing a compromise and settlement among the parties. In so
holding, we do not reach and express no opinion regarding the proper characterization and
enforceability of the December 18 agreement. Those issues must await the rendition of a final
judgment. 


CONCLUSION

 Because we find that the order that Qwest challenges on appeal is interlocutory and
non-appealable, we dismiss this appeal for want of jurisdiction.



 _____________________________________________

 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Dismissed for Want of Jurisdiction

Filed: January 14, 1999

Publish

1. AT&T also sued SP Construction, Inc. and C&S Directional Boring Company, Inc. SP and
C&S are not subject to the district court's orders at issue here and are not parties to this appeal. 

2. Boring, for purposes of this case, is a construction technique used to install cable in areas
where there are surface obstructions like rivers and roads.
3. At the conclusion of the December 18 hearing the court stated:


Okay. With respect to the plaintiff's application for temporary injunction, judgment
is rendered.


Schwartz [AT&T's counsel], you'll do the order. Pass it by Shaunessy [Qwest's
counsel] and discussion for forum [sic] and then you all will submit it to me.
4. See Tex. R. Civ. P. 11.
5. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a) (West Supp. 1999).
6. This Court has previously held that a temporary injunction is void for lack of a bond. See
Chambers v. Rosenberg, 916 S.W.2d 633 (Tex. App.--Austin 1996, writ denied). As we hold
that the Februrary 17 order is not a temporary injunction, the lack of a bond does not affect its
validity.
7. We note that a trial date was provided in the temporary restraining order.


tive for three years from
its date. Significantly, it is not made subject to further modification by the district court while the
case is pending, but instead may only be extended or modified in a writing signed by the parties. 
Finally, the record before us does not reflect that a writ of injunction was issued in response to
the district court's order.

 While the December 17 order uses the words "desist and refrain," the use of such
words alone does not compel a finding that the order is a temporary injunction. See Sobel v.
Taylor, 640 S.W.2d 704, 708 (Tex. App.--Houston [14th Dist.] 1982, no writ) (use of word
"enjoined" did not require order to be deemed temporary injunction).

 It is clear that Qwest and AT&T on December 18 intended to resolve several of the
issues pending before the district court. It is equally clear that they meant to leave other issues,
such as past damages, for resolution at trial. AT&T contends, and the district court concurs, that
an enforceable agreement was achieved. Qwest is adamant that no agreement ever existed and that
if it did, Qwest withdrew its consent prior to rendition of the district court's order. See S & A
Restaurant Corp. v. Leal, 892 S.W.2d 855, 857 (Tex. 1995) (party may revoke consent any time
before judgment is rendered).

 An appeal cannot be taken from an otherwise non-appealable order by seeking to
disguise it as an injunction. See Elm Creek Villas Homeowner Ass'n, Inc. v. Beldon Roofing &
Remodeling Co., 940 S.W.2d 150, 154 (Tex. App.--San Antonio 1996, no writ). An appeal from
an interlocutory order granting or refusing a temporary injunction may not be used as a vehicle
for carrying other non-appealable interlocutory orders and judgments to the appellate court. 
Browne v. Bear, Stearns & Co., Inc., 766 S.W.2d 823, 824 (Tex. App.--Dallas 1989, writ
denied); see also Walters, 663 S.W.2d at 126.

 Qwest attempts to wrap in the cloak of a temporary injunction the district court's
non-appealable interlocutory order enforcing an agreement compromising certain issues in dispute. 
This is impermissible.

 We hold that the February 17 order is not a temporary injunction, but a non-appealable interlocutory order enforcing a compromise and settlement among the parties. In so
holding, we do not reach and express no opinion regarding the proper characterization and
enforceability of the December 18 agreement. Those issues must await the rendition of a final
judgment. 


CONCLUSION

 Because we find that the order that Qwest challenges on appeal is interlocutory and
non-appealable, we dismiss this appeal for want of jurisdiction.



 _____________________________________________

 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Dismissed for Want of Jurisdiction

Filed: January 14, 1999

Publish

1. AT&T also sued SP Construction, Inc. and C&S Directional Boring Company, Inc. SP and
C&S are not subject to the district court's orders at issue here and are not parties to this appeal. 

2. Boring, for purposes of this case, is a construction technique used to install cable in areas
where