TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00303-CV






Vireo, P.L.L.C.; Chaetura, P.L.L.C.; William Franklin, M.D., P.A.; 


Don Connell, M.D.; and William Franklin, M.D.
, Appellants



v.



Danny Cates; CD Testing, Inc.; and Eagle Medical Management, Inc.
, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 96-01580, HONORABLE HUME COFER, JUDGE PRESIDING 






 Plaintiffs appeal from a trial-court order overruling their motion to compel arbitration of
defendants' counterclaims. (1) We will affirm the order.


THE CONTROVERSY


 The plaintiffs own and operate medical centers. They entered into contracts ("Management
Agreements") with Eagle Medical Management, Inc., in which Eagle undertook for compensation to
administer and manage the non-medical operations of the centers. Defendant Danny Cates executed the
Management Agreements for Eagle as its "chief executive officer," agreeing therein that its provisions would
bind him as an Eagle officer. Defendant CD Testing, Inc., was not a party to the Management Agreements;
plaintiffs alleged Cates was "president" of CD Testing, Inc.

 In Paragraph Nine of the Management Agreements, the parties contracted that "no civil
action concerning any dispute under this Agreement shall be instituted before any court, and all such
disputes shall be submitted to final and binding arbitration before a single arbitrator" who shall decide the
dispute under the laws of the State of Texas and the Rules of the American Arbitration Association
(emphasis added). The provision excluded from its scope applications to a court for equitable relief. (2)

 A dispute arose between the parties. The plaintiffs canceled the Management Agreements
unilaterally; the defendants contended the termination was wrongful. The parties attempted without success
to resolve the dispute but neither initiated arbitration proceedings as required by Paragraph Nine of the
Management Agreements. The plaintiffs sued the defendants in district court on causes of action for money
damages; the defendants counterclaimed by causes of action for declaratory relief and money damages for
wrongful termination of the Management Agreements.

 The plaintiffs moved the trial court to abate defendants' counterclaims and compel their
arbitration as required by Paragraph Nine. The trial judge overruled the plaintiffs' motion, finding from the
record that plaintiffs had abandoned as a matter of law their right under Paragraph Nine to compel
arbitration. The plaintiffs appeal to this Court on four points of error: (1) the plaintiffs, as a matter of law,
did not abandon their right to compel arbitration of defendants' counterclaims; (2) the trial-court order is
clearly erroneous; (3) the "evidence" is legally and factually insufficient to support a finding that plaintiffs
waived or abandoned their right to compel arbitration; (3) and (4) the trial judge abused his discretion in
overruling the plaintiffs' motion to compel arbitration. (4) We hold the trial judge did not abuse his discretion,
the ultimate issue raised by the points of error.


JUDICIAL ENFORCEMENT OF ARBITRATION AGREEMENTS


 The trial-court proceeding was a statutory proceeding governed by section 171.002(a) of
the Texas Civil Practice and Remedies Code. The statute directs a trial judge to "order the parties to
proceed with arbitration" when a party applies for such relief and shows "the opposing party's refusal to
arbitrate." Tex. Civ. Prac. & Rem. Code Ann. § 171.002(a) (West Supp. 1997). When "the opposing
party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the
determination of the issue so raised and shall order arbitration if found for the moving party; otherwise the
application shall be denied." Id. (emphasis added). In Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266,
268-69 (Tex. 1992), the supreme court explained these statutory provisions. They contemplate "summary
proceedings" akin to those applicable in deciding motions for summary judgment--the trial judge must
decide "whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations." 
Unlike summary judgment proceedings, however, "if the material facts necessary to determine the issue
are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct
an evidentiary hearing to determine the disputed material facts." Anglin, 842 S.W.2d at 268-69
(emphasis added).

 In the present case, neither party introduced evidence at the hearing. No affidavits,
discovery documents, or stipulations were in the record; the record before the court contained only the
parties' respective pleadings. (5) The pleadings established the following agreed facts: the parties were in
dispute concerning defendants' performance under the Management Agreements; neither initiated the
arbitration proceedings expressly required by Paragraph Nine before resorting to causes of action seeking
a judicial remedy in money damages, although each claimed to be an aggrieved party in the dispute; and
in bringing their respective claims in district court, neither requested specific performance of the arbitration
provision forbidding any "civil action concerning any dispute under this Agreement," as stated in Paragraph
Nine. Assuming for the moment that plaintiffs' claims against defendants concerned (6) a "dispute under"
the Management Agreements (which plaintiffs deny) what consequences does the law assign to those
undisputed facts?

 A plaintiff who sues on an arbitrable claim unconditionally, without having initiated
arbitration of the claim or demanding specific performance of the arbitration agreement, creates in the
defendant a right of election--the defendant may insist or not upon arbitration, as he chooses. If the
defendant does not insist upon arbitration, the contracting parties have mutually repudiated the arbitration
covenant as a matter of law and waived any right thereunder. 6 C. J. S. Arbitration § 37 at 226 (1975);
4 Am. Jur. 2d Alternate Dispute Resolution § 130 at 170 (1995); R. P. Davis, Waiver of Arbitration
Provision in Contract, 161 A.L.R. 1426, 1428-34 (1946). (7) See, e.g., Mendoza v. Gonzales, 695
S.W.2d 266, 271 (Tex. App.--San Antonio 1995, no writ); Premier Petroleum Co. v. Box, 255
S.W.2d 298, 301 (Tex. App.--Eastland), writ ref'd n.r.e., 257 S.W.2d 105 (Tex. 1953).

 It is undisputed here that defendants have elected not to arbitrate. They possessed a right
of election, however, only if the plaintiffs' claims against them concerned a "dispute under" the Management
Agreements or were so "factually intertwined" with those agreements as to invoke the judicial policy
favoring a joint resolution of multiple claims and the avoidance of multiple determinations of the same
matters. See Anglin, 842 S.W.2d at 271. We turn then to that question of law, determinable from the
parties' respective pleadings.


CONSTRUCTION OF THE PLEADINGS


 We believe it desirable to set out verbatim the material parts of the plaintiffs' petition. 
These allege as follows:


6. On or about May 1995, Defendant Cates began acting as agent for the medical
centers for certain matters. On or about July, 1995, that agency relationship was
formalized by the signing of three Management Service Agreements between Eagle
and the respective medical centers ("Management Agreements") . . . . 


7. Prior to entering into the Management Agreements, Cates represented to the
physicians that he had the expertise to manage the medical centers.


8. In addition to assuming management responsibilities, Eagle, its officers, directors
and shareholders agree not to compete with the medical centers in Travis, Hays
and Williamson Counties during the term of the Management Agreements and for
a period of twelve months after the Management Agreement [sic] was terminated
for any reason.


9. While acting as the agent for the medical centers, Cates entered into agreements
with Southwestern Bell telephone . . . to provide telephone services to Vireo and
Chaetura. . . . Rather than entering into the SWBT Agreements under the
principles' names, Cates entered into the SWBT Agreements under the name of
Dan Cates d/b/a CD Testing, Inc. The phone numbers for the SWBT Agreements
are listed in the SWBT directory under Southwest Medical Center for the use of
the medical centers' patients.


10. On or about November 1995, the medical centers terminated the Management
Agreements with Eagle.


11. After the Management Agreements were terminated, on information and belief, the
medical centers became aware that Cates had continued to operate CD Testing
during the term of the Management Agreements in direct competition with the
medical centers and that after the contract was terminated, Cates actively recruited
business from the clients of the medical centers and has represented to the medical
centers' clients that the medical centers have or are about to go out of business.


12. After the Management Agreements were terminated, Cates claimed that the
Management Agreements were wrongfully terminated. The Management
Agreements provide for arbitration of disputes. The parties attempted informal
settlement, but on or about February 8, 1996, the Plaintiffs notified Cates and
Eagle that settlement was unrealistic and that the parties would need to arbitrate
the matter.


13. On or about February 8, 1996, without any warning, Cates had the telephone
company disconnect the telephone services to Vireo and Chaetura for the numbers
listed in Exhibit B attached hereto. 


14. In addition to the huge volume of telephone calls that the medical centers receive
from their patients for routine and emergency matters, this is asthma season and
many of the medical centers' patients suffer from asthma and need to contact the
medical centers for emergencies.



Upon the foregoing factual allegations, plaintiffs founded two causes of action described as follows:

Tortious Interference with Contracts and Business Relationships.


 
15. The [defendants'] conduct constitutes a wrongful or malicious interference with
the [plaintiffs'] performance or the formation of the contracts or the right to
pursue a lawful business calling, trade, or occupation for which damages may be
recovered.


 Breach of Fiduciary Duty.


 16. Cates' conduct prior to execution of the Management Agreements constitutes
breach of fiduciary duty in that Cates failed to exercise reasonable care and
diligence in to [sic] the medical centers in the performance of his duties, he
breached his duty to obey, he breached his duty to give information, and he
breached his duty of loyalty.



(emphasis added).


 Plaintiffs attached to their petition and incorporated therein copies of the Management
Agreements. Their allegations may be summarized as follows: (1) before making the Management
Agreements Cates obtained telephone service for the medical centers in his own name and represented he
had the expertise to manage the medical centers; (2) plaintiffs terminated the Management Agreements in
November 1995 and learned thereafter that Cates, while the agreements were in force, had operated CD
Testing, Inc., in "direct competition with the medical centers; (8) (3) Cates continued to do so, after plaintiffs
terminated the Management Agreements, by recruiting medical-center clients and representing that the
centers had or were about to go out of business; and (4) Cates caused termination of telephone service to
the medical centers without warning. These allegations are the entire sum and substance of what plaintiffs
mean by their causes of action for "tortious interference" and "breach of fiduciary duty."

 As might be expected, defendants' counterclaims against plaintiffs--claims the plaintiffs
moved to assign to binding arbitration--alleged a different view of the material transactions. In their first
amended original answer, defendants requested compensatory damages, punitive damages, and declaratory
and injunctive relief on allegations that may be summarized as follows: (1) plaintiffs terminated the
Management Agreements November 9, 1995, assertedly for cause but in truth to deprive Eagle and Cates
of certain financial benefits they were entitled to receive under the Management Agreements if they were
terminated without cause; (2) Eagle and Cates substantially performed their obligations under the
Management Agreements, precluding their termination for cause; (3) even assuming plaintiffs had a right
to terminate for cause, however, they failed to give Eagle and Cates thirty-days previous notice and an
opportunity to cure any deficient performance as expressly required by the Management Agreements; (4)
plaintiffs' conduct constituted a prior breach of the Management Agreements and their fiduciary duties,
entitling defendants to compensatory damages; (5) the noncompetition provision in the Management
Agreements prohibited Eagle and Cates from providing management services to others whom plaintiffs
reasonably believed were in competition with plaintiffs' medical centers, but the noncompetition provision
did not prohibit the drug-testing services actually provided by CD Testing, Inc., and defendants requested
declaratory relief accordingly; (6) defendants were entitled to money damages for sums expended in
reliance upon false representations made by plaintiffs in inducing defendants to enter into the Management
Agreements; and (7) defendants were entitled to recover from plaintiffs compensatory and punitive
damages for their defamatory statement to third persons that plaintiffs had terminated the Management
Agreements because they discovered that Cates had embezzled money from the medical centers.

 Plaintiffs' petition avers no basis, apart from the non-competition agreement or another
duty expressed or implied in the Management Agreements, for imposing upon the defendants a duty not
to compete with the medial centers for patients and a duty to maintain the telephone service that Cates had
taken out in his own name before execution of those agreements. One defendant--CD Testing, Inc.--was
not a party to the Management Agreements and its corporate autonomy is unassailed in the record. No
basis appears in the plaintiffs' allegations for a contention that CD was prohibited to compete for patients
or that CD is otherwise liable for the damages claimed by plaintiffs. 

 Nor does the petition allege that any of Cates' representations were false and no basis is
apparent for a theory that any of them were actionable per se. The sole factual allegation pertaining to the
period of time "prior to execution of the Management Agreements" was the plaintiffs' allegation that "Cates
represented to the" plaintiffs before entering into the Management Agreements "that he had the expertise
to manage the medical centers." This representation was expressly repeated in the Management
Agreements. The petition, moreover, suggests no basis for holding CD Testing, Inc., liable for Cates'
alleged breaches of fiduciary duty, which would appear to be personal to him especially "prior to the
execution of the Management Agreements."

 We believe plaintiffs' causes of action either concern (relate to) a dispute under the
Management Agreements or those causes of action are "factually intertwined" with those agreements
sufficiently to invoke the judicial policy favoring a joint resolution of claims and the avoidance of multiple
determinations of the same matters. Anglin, 842 S.W.2d at 271. Suppose, for example, that an arbitrator
construes the noncompetition provision as defendants contend it should be construed, resulting in a
determination that the provision did not prohibit CD's drug-testing services; and a district court construes
the provision to the contrary. Or suppose the arbitrator determines plaintiffs first breached the Management
Agreements by terminating them without the requisite notice, thereby entitling defendants to damages and
cancelling the noncompetition provision, among other contract obligations; but the district court finds to the
contrary. See Custom Drapery Co. v. Hardwick, 531 S.W.2d 160, 165-66 (Tex. Civ. App.--Houston
[1st Dist.] 1975, no writ) (former employer precluded from enforcing noncompetition covenant where he,
not employee, caused breach of contract). The possibility of contradictory determinations in the two
forums is obvious. The relation of plaintiffs' causes of action to the Management Agreements is obvious. 
We hold accordingly and affirm the trial-court order.



 

 John Powers, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: September 11, 1997

Publish
1.   The plaintiffs, appellants here, are Vireo, P.L.L.C., and Chaetura, P.L.L.C., each a professional
limited-liability company organized and existing under the laws of the State of Texas to practice medicine,
together with William Franklin, M.D., and Don Connell, M.D.
2. In the present cause, the parties applied for injunctive relief each against the other. No
controversy in that respect is presented in the appeal.
3. We overrule point of error three because it is based upon an erroneous assumption. No
evidence was received at the hearing on plaintiffs' motion to compel arbitration.
4. Defendants moved that we dismiss the appeal for want of subject-matter jurisdiction because of
the interlocutory nature of the trial-court order. Section 171.017 of the Arbitration Act provides that "[a]n
appeal may be taken from . . . an order denying an application to compel arbitration made under Section
171.002(a)," and that such appeals "shall be taken in the manner and to the same extent as from orders
and judgments in a civil action." Tex. Civ. Prac. & Rem. Code Ann. § 171.017(a)(1), (b) (West Supp.
1997). Defendants reason that this statute does not specifically authorize an interlocutory appeal but only
an appeal after final judgment as in the case of most interlocutory orders. We disagree. See Jack B.
Anglin Co. v. Tipps, 842 S.W.2d 266, 271-72 (Tex. 1992). We overrule defendants' motion to dismiss
the appeal.
5.   Plaintiffs apparently contend in their appellate briefs that they were entitled to relief on their
motion to compel arbitration of defendants' counterclaims, as a matter of law, because defendants did not
file a response to the plaintiffs' motion. We reject the argument. Defendants' failure to file a response did
not entitle plaintiffs to relief by default; it remained plaintiffs' burden to persuade the trial court that a proper
construction and application of Paragraph Nine to the pleadings required the requested relief as a matter
of law. Cf. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979) (summary
judgment may not be granted by default for want of response by nonmovant, but only when summary
judgment record shows right to judgment as a matter of law).
6.   In ordinary usage, the word "concern" means "a connecting relation" in the present context. 
Webster's Third International Dictionary 470 (Philip B. Gove ed., 1986). This appears less restrictive
than the term "arise under" sometimes found in the arbitration provision of contracts.
7.   The annotation does not mention "prejudice" to either party as a factor to be considered in
determining the issue of waiver in the circumstances indicated. Prejudice is a relevant factor, however,
when the plaintiff claims the defendant has waived his right to arbitrate by his participation in the
action--unless the plaintiff is prejudiced thereby, he cannot avoid arbitration merely on the ground of the
defendant's participation in the judicial proceeding. See, e.g., Prudential Sec., Inc. v. Marshall, 909
S.W.2d 896, 898-99 (Tex. 1995); see also Joel E. Smith, Annotation, Defendant's Participation In
Action As Waiver of Right to Arbitration of Dispute Involved Therein, 98 A.L.R. 767 (1980).


 When a plaintiff sues in violation of the arbitration agreement, however, the resulting issue pertains
to the right of election thereby created in the defendant by operation of law. Will the defendant join issue
in court or will he insist upon his contract right of arbitration? If he is denied the right of election, the
prejudice is self-evident. It is particularly apparent if the defendant should be required to arbitrate his
claims against the plaintiff but defend in court the plaintiff's claims against himself, when each party's claims
against the other come within the scope of the arbitration agreement and arise from the same general
dispute. It is unreasonable to suppose that the law validates such a confusion of forums and proceedings,
the possibility of conflicting determinations, and the resulting prejudice.
8.   The "Noncompetition" provision in the Management Agreements stated as follows:


 Eagle, its officers, directors and shareholders covenant and agree that during the term of
this Agreement and for a period of twelve (12) months after this Agreement is terminated
for any reason, Eagle, its officers, directors, and shareholders shall not provide the same
or similar services described in this Agreement to any other person, individual or
otherwise, who [plaintiffs] reasonably believes to be in competition with [plaintiffs] in
Travis, Williamson and/or Hays County, Texas. Eagle agrees to provide [plaintiffs] with
ten (10) days prior written notice of Eagle's intent to enter into a management services
agreement with any third parties.



. No
controversy in that respect is presented in the appeal.
3. We overrule point of error three because it is based upon an erroneous assumption. No
evidence was received at the hearing on plaintiffs' motion to compel arbitration.
4. Defendants moved that we dismiss the appeal for want of subject-matter jurisdiction because of
the interlocutory nature of the trial-court order. Section 171.017 of the Arbitration Act provides that "[a]n
appeal may be taken from . . . an order denying an application to compel arbitration made under Section
171.002(a)," and that such appeals "shall be taken in the manner and to the same extent as from orders
and judgments in a civil action." Tex. Civ. Prac. & Rem. Code Ann. § 171.017(a)(1), (b) (West Supp.
1997). Defendants reason that this statute does not specifically authorize an interlocutory appeal but only
an appeal after final judgment as in the case of most interlocutory orders. We disagree. See Jack B.
Anglin Co. v. Tipps, 842 S.W.2d 266, 271-72 (Tex. 1992). We overrule defendants' motion to dismiss
the appeal.
5.   Plaintiffs apparently contend in their appellate briefs that they were entitled to relief on their
motion to compel arbitration of defendants' counterclaims, as a matter of law, because defendants did not
file a response to the plaintiffs' motion. We reject the argument. Defendants' failure to file a response did
not entitle plaintiffs to relief by default; it remained plaintiffs' burden to persuade the trial court that a proper
construction and application of Paragraph Nine to the pleadings required the requested relief as a matter
of law. Cf. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979) (summary
judgment may not be granted by default for want of response by nonmovant, but only when summary
judgment record shows right to judgment as a matter of law).
6.   In ordinary usage, the word "concern" means "a connecting relation" in the present context. 
Webster's Third International Dictionary 470 (Philip B. Gove ed., 1986). This appea