Pinnacle Gas Treating, Inc. v. Raymond Michael Read, Mark William Read, Owners, and Thomas I. Fetzer, II, Lienholder
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-257-CV

Â Â Â Â Â PINNACLE GAS TREATING, INC.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â RAYMOND MICHAEL READ,
Â Â Â Â Â MARK WILLIAM READ, OWNERS,
Â Â Â Â Â AND THOMAS I. FETZER, II, LIENHOLDER,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees
 

From the 278th District Court
Leon County, Texas
Trial Court # 11745-A
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â 
Â Â Â Â Â Â This is an appeal arising from a condemnation suit. Pinnacle Gas Treating, Inc. (Pinnacle)
filed several condemnation suits in Leon County. Because Leon County is in three judicial
districts, the clerk rotated the petitions among them. Tex. Prop. Code Ann. Â§ 21.013(d)
(Vernon Supp. 1999). The District Clerk assigned the petition in this case to the 278th District
Court. Judge Sam Bournias of the 87th District Court appointed special commissioners who
gave notice, held a hearing, and made an award of damages to the condemnees (appellees in
this appeal). Pinnacle âappealedâ from the award. After Pinnacle deposited the amount of the
award, Judge Bournias signed an order granting it a writ of possession. The condemnees then
filed a plea to the jurisdiction and a motion to dismiss, asserting that the appointment of the
special commissioners by Judge Bournias was void. Judge Jerry Sandel of the 278th District
Court dismissed the condemnation proceedings and directed the cause to proceed to trial on the
condemneesâ counter-claims. Pinnacle attempts to challenge Judge Sandelâs order through this
direct appeal.
Â Â Â Â Â Â Pinnacle asserts that we have jurisdiction under Section 51.014(a)(4) of the Civil Practice
and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. Â§ 51.014(a)(4) (Vernon Supp.
1999). Section 51.014(a)(4) states:
A person may appeal from an interlocutory order of a district court, county court at law,
or county court that:
. . .
Â Â Â Â Â Â (4)Â Â grants or refuses a temporary injunction or grants or overrules a motion to dissolve a
temporary injunction as provided by Chapter 65;


 . . . .

Id. 
Â Â Â Â Â Â Generally, appeals may be taken only from final orders or judgments. See Jack B. Anglin
Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992). Interlocutory orders may be appealed only if
permitted by statute. Id. Although Judge Sandelâs order dismisses the condemnation
proceedings, it also directs that the matter proceed to trial on remaining issues. We do not
believe that the order is an appealable temporary injunction or order dissolving a temporary
injunction. Nor is it one which disposes of all parties and issues, so as to be final. See id. 
Accordingly, we have no choice but to dismiss this appeal. 
Â Â Â Â Â Â Pinnacle asserts in its brief that an alternative basis for granting relief would be to issue a
writ of mandamus. Pinnacle has cited no authority, nor have we found any, to suggest that
mandamus relief may be sought alternatively in a direct appeal. A petition for a writ of
mandamus commences an original proceeding that is governed by different rules than the rules
governing direct appeals. See Tex. R. App. P. 52. We will not entertain this request.
Â Â Â Â Â Â This cause is dismissed for want of jurisdiction.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Â Â Â Â Justice Gray
Dismissed for want of jurisdiction
Opinion delivered and filed February 2, 2000
Publish



other grounds by In re J.F.C., 96 S.W.3d 256, 267 (Tex. 2002) and
In re C.H., 89 S.W.3d at 26 (holding that a parents neglect of older
children could indicate that the child the subject of the suit Âwould face this
type of treatment in the future if returnedÂ to the parent); In re Baby Boy
R., 191 S.W.3d 916, 925 (Tex. App.ÂDallas 2006, pet. denied)Â (holding
that a parent's guilty plea of aggravated sexual assault of his step-daughter
was evidence of conduct endangering to the well-being of his unborn child); In
re W.J.H., 111 S.W.3d 707, 716 (Tex. App.ÂFort Worth 2003, pet. denied)
(holding that abusive conduct toward other children Âcan be used to support a
finding of endangerment even against a child who was not yet born.Â).Â  Thus,
any abusive or neglectful conduct by Jesse toward J.A.R., J.A.R., and J.R.Âs
older sibling, H.N.S., is relevant in an inquiry to determine whether JesseÂs
parental rights to the children should be terminated under section
161.001(1)(E).

There was testimony from caseworkers at
the Department that there was a likelihood that all of the children were at
risk for future abuse similar to that which H.N.S. suffered because the younger
children were beginning to show the same behaviors which led to JesseÂs
frustration with H.N.S.Â  At the time of the trial, Jesse was incarcerated
because he had pled guilty to endangering a child for the egregious treatment
of H.N.S.Â  Jesse further testified that he had an anger problem, which he
contended was addressed through an anger management course he took while in
prison.Â  

There was conflicting testimony
regarding whether JesseÂs biological children were aware of the abuse
perpetrated against H.N.S.Â  However, H.N.S.Âs next older sibling, J.M.S., who
was also not JesseÂs biological child, was fully aware of the treatment of
H.N.S. and that it was used as punishment by Jesse.Â  While in foster care,
J.M.S. would state that H.N.S. needed to go to the closet when she was in trouble.Â 
J.A.R. and J.A.R. were in the home during some of the time during the abuse,
and although it appears that they were very young, there was testimony that
they may have been able to perceive to some extent the trauma suffered by
H.S.N. due to JesseÂs cruel treatment.Â  J.R. was born in the weeks prior to the
removal of the children and thus, not presently affected.

Further, Jesse was serving a twenty-four
month sentence in the state jail for the endangerment charge, but additionally
a ten year community supervision for felony DWI he was serving was revoked and
he was sentenced to eight years in prison for that offense.Â  That sentence was
being served concurrently with the endangerment sentence, and Jesse expected to
be released on parole almost immediately after the termination hearing.Â  Until
the time of his release, he intended to place the children with his parents,
from whom the children had previously been removed.Â  

Using the appropriate standards as set
forth above, we find that the evidence was both legally and factually
sufficient for the trial court to have determined that Jesse engaged in a
course of conduct that endangered the physical or emotional well-being of the
children. 

Best Interest of the Children

To terminate the parent-child
relationship, the trial court must also find that termination is in the best
interest of the children.Â  Tex. Dep't of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987).Â  When reviewing the sufficiency of the
best-interest evidence, we apply the nonexclusive factors found in Holley v.
Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).Â  These factors include (1) the
desires of the children, (2) the emotional and physical needs of the children
now and in the future, (3) the emotional and physical danger to the children
now and in the future, (4) the parental abilities of the individuals seeking
custody, (5) the programs available to assist these individuals to promote the
best interest of the children, (6) the plans for the children by these
individuals or by the agency seeking custody, (7) the stability of the home or
proposed placement, (8) the acts or omissions of the parent that may indicate
that the existing parent-child relationship is not a proper one, and (9) any
excuse for the acts or omissions of the parents.Â  Id.Â  The Department
need not prove all of these factors.Â  In re C.H., 89 S.W.3d at 27.Â  In
an appropriate case, proof of just one factor may be sufficient.Â  Id.

Jesse contends that the evidence before
the trial court consisted almost entirely of contradictory opinions regarding
the best interest of the children; however, he does not explain what those
contradictions were.Â  The testimony from each of the witnesses except for Jesse
was that termination was in the best interest of the children.Â  

Jesse further contends that the basis
for the opinions regarding best interest was his lack of participation in
services which was impossible due to his incarceration.Â  However, Jesse was
able to and did participate in some services prior to his incarceration,
including therapy.Â  His therapist had reported while they discussed appropriate
parenting skills, Jesse did not demonstrate those skills during scheduled
visits with the children while they were voluntarily placed outside the home.Â 
During that time, the therapist had serious concerns about JesseÂs ability to
apply good parenting skills, even after taking parenting classes and
participating in therapy.Â  

The DepartmentÂs witnesses stated that
they believed that there was a significant risk that Jesse would abuse or
neglect the children if returned to him.Â  He intended to place the children
with his parents who were allowing a registered sex offender to have contact
with the children.Â  Jesse proffered no witnesses on his behalf other than
himself to counter the DepartmentÂs contentions, and the trial court may have
found his testimony to be incredible.Â  

The DepartmentÂs witnesses also
testified that the children were ÂabsolutelyÂ adoptable due to their young ages
and that adoption was their permanency plan as soon as possible.Â  

Using the appropriate standards, we find
that the evidence was legally and factually sufficient to support the trial
courtÂs finding that the termination of the parent-child relationship was in
the best interest of the children.Â  We overrule issue two.

CONCLUSION

Â Â Â Â Â Â Â Â Â Â Â  Having found no reversible
error, we affirm the judgment of the trial court.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  TOM
GRAY

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Before
Chief Justice Gray,

Â Â Â Â Â Â Â Â Â Â Â  Justice
Davis, and

Â Â Â Â Â Â Â Â Â Â Â  Justice
Scoggins

Affirmed

Opinion
delivered and filed July 13, 2011

[CV06]









[1]
The mother of all five children, Melissa, resided in the home with Jesse and
the children at the time of the removal.Â  Melissa signed a voluntary affidavit
of relinquishment and her parental rights had been already terminated at the
time of the final hearing pursuant to an order of termination.